E–BRU, INC., Plaintiff,

v.

Frank X. GRAVES, Jr., William Mason, Peter D. Baldini, and James T. Hannon, Defendants.

Civ. A. No. 83–2413.

United States District Court, D. New Jersey.

July 18, 1983.

---

Kassner, Haigney & Thomson by Stacey Haigney & Herbert S. Kastner, New York City, and Lovas, Ginsberg & Akselrod by Kenneth H. Ginsberg, Dover, N.J., for plaintiff.

Ralph L. DeLuccia, Jr., Corp. Counsel, Paterson, N.J., for defendants.

## OPINION

SAROKIN, District Judge.

Voltaire did *not* write: "I disapprove of what you say, but will defend to the death your right to say it, *unless the subject is sex.*" Nor did the framers of the United States Constitution. So-called adult book stores are established to sell merchandise intended to arouse sexual passions. They also seem to arouse passions of an entirely different sort. If a merchant announced his intention to open a store dedicated to murder mysteries, no matter how violent or bloody, nary a picket or protester would appear. But should one announce that sex is to be the main theme, then organized opposition is inevitable. The public permits books, movies and television to innundate us with murder by gun or knife, strangling, rape, beatings and mayhem, all of which are illegal. But the depiction of sexual acts, most of which are legal, are condemned with a furor. We will tolerate without a murmur a movie showing the most brutal murder, but display a couple in the act of love and the outcry is deafening. This is not meant to be a defense of the sleazy movies and adult book stores which pander to the bizarre and the deviant, but it

is a plea for perspective in deciding whether such materials genuinely warrant an intrusion into the rights guaranteed by the first amendment.

No matter how offensive the majority may find a particular form of speech, it is fundamental to our democracy that the views of the minority cannot be and should not be stifled. We must remember that we are dealing only with words and pictures, the harmful effect of which, if any, has never been clearly established. If the fear is for our children, then appropriate controls and restrictions should be sufficient. We would not burn down our library because it contained one or more books which would be detrimental to our youth. Likewise we should not prohibit an entire book store merely because we may find some of its offerings to be objectionable. More important, to condemn in advance before the content is even known, is a greater evil than any which the books may contain; and the harm which comes from prohibiting the existence of a book store is far greater than any harm which may come from the books themselves.

## STATEMENT OF FACTS

Plaintiff, E-Bru, Inc., seeks to open an "adult book store" in Paterson, New Jersey. In January, 1983, E-Bru leased the premises located at 1113 Main Street in Paterson as a site for its business. Subsequently, the company sought to make minor repairs to the store and, consistent with the regulations of the state and the city, applied for a permit to do so. The first application was rejected by Peter Baldini, the construction official of Paterson. Baldini advised plaintiff that two sketches of the store site were required to be submitted with the application for repairs and also advised E-Bru's attorney to review Article 10 of Paterson's ordinances, which regulates obscenity and indecency.

On March 21, 1983, plaintiff filed with the Building Bureau of Paterson a revised application, specifying in greater detail the nature of the merchandise to be sold at the store. The application stated that such merchandise included new and used books, "general merchandise", audio visual devices, and marital aids. It was not until May 6, 1983, that defendants ruled on plaintiff's revised application. On that date, defendant Baldini stated in a letter to plaintiff's attorney, that the application was being denied because plaintiff did not comply with Section 803 of Paterson's Zoning Ordinances. That section requires all businesses located in the area of plaintiff's store to have one off-street parking space available to the public for each 300 square feet of commercial floor space. Compliance with that provision would require plaintiff to make available two parking spaces.

It is plaintiff's contention that the zoning law in question has never been enforced before in the area where its store is located and is being used only to restrain plaintiff's exercise of its first amendment rights. Plaintiff also contends that compliance with the ordinance is impossible because no additional parking space is available in the area. On July 11, 1983, this Court held a hearing to determine whether Paterson's zoning ordinance was being applied discriminatorily.

## DISCUSSION OF THE LAW

■ This is an application for injunctive relief and therefore the court must consider the following criteria: whether the moving party has a reasonable probability of eventual success in the litigation; whether the movant will suffer irreparable harm if relief is not granted; the possibility of harm to other interested persons from the grant or denial of the injunction; and the public interest. *In re Arthur Treacher's Franchisee Litigation*, 689 F.2d 1137, 1143 (3d Cir.1982). In considering the first of these criteria, plaintiff's probability of success in the litigation, the court must apply fundamental principles of first amendment law.

■ Under the first amendment to the United States Constitution, prior restraints on expression are abhorred. *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584 (1963). Therefore, any system of prior restraints is immediately suspect and there is a "heavy presumption" against their constitutional va-

lidity. *New York Times Company v. United States,* 403 U.S. 713, 714, 91 S.Ct. 2140, 2141, 29 L.Ed.2d 822 (1971). Of course, liberty of speech is not absolute and not all prior restraints are invalid. *Times Film Corporation v. City of Chicago,* 365 U.S. 43, 47, 81 S.Ct. 391, 393, 5 L.Ed.2d 403 (1961). But nevertheless, it is the party seeking to impose the restraint that carries a "heavy burden" of justifying its imposition. *Organization for a Better Austin v. Keefe,* 402 U.S. 415, 419, 91 S.Ct. 1575, 1577, 29 L.Ed.2d 1 (1971).

■ Obscenity is not within the area of constitutionally protected expression. *Roth v. United States,* 354 U.S. 476, 485, 77 S.Ct. 1304, 1309, 1 L.Ed.2d 1498 (1957). There is no contention by defendants, however, that the merchandise that plaintiff seeks to sell is obscene or outside of the protection of the first amendment. Defendants' only contention is that plaintiff has not complied with the zoning ordinance requiring that a certain number of off-street parking spaces be made available to the public by merchants located in the area of plaintiff's store. Defendants contend that in rejecting plaintiff's application, they treated plaintiff no differently than any other applicant who was not in compliance with the ordinance. The facts adduced at the hearing prove otherwise.

At the hearing, plaintiff presented the testimony of a planning expert who reviewed all certificates of occupancy issued to businesses located on Main Street by the City of Paterson from January 1980 to May 1983. Of those certificates reviewed, twenty-two were for businesses located in the B–2 zone district, where off-street parking is required. The remainder of the certificates were for businesses in the B–4 zone district, which is exempt from off-street parking requirements.

Of the twenty-two businesses that received certificates of occupancy, only five had some off-street parking, but even those did not necessarily meet the strict requirements of the zoning ordinance. Plaintiff's expert also reviewed sixteen of seventeen applications that defendants claim were denied for, among other reasons, failure to comply with the off-street-parking requirements. One application was not reviewed because it could not be located. Of the sixteen reviewed, only two were rejected solely because off-street parking was not made available, and those two rejections post-dated the denial of plaintiff's application.

Plaintiff's expert also testified that enforcement of the parking requirement would result in stores being left vacant on Main Street, because no off-street parking is available. That contention was not disputed by defendants' planning expert, who also testified. Defendants sought to establish that in other areas of the city, where off-street parking is required, the zoning ordinance was enforced. Even if defendants are correct, however, that fact is irrelevant, since in those areas it may well be that off-street parking is available. The only person who could have either explained or justified the actions of the city with respect to plaintiff's application was the construction official, and he was not called by defendants as a witness. The court can only conclude that plaintiff's expert could not be refuted and that the custom and the practice of the construction official in granting certificates of occupancy, was as plaintiff's expert testified.

The court concludes that no clear evidence has been presented by defendants establishing that any applicant was ever rejected solely for failure to fulfill the off-street-parking requirement. It is likely that plaintiff will establish at the final hearing that the ordinance was enforced against plaintiff only to inhibit its exercise of first amendment freedoms. Such discriminatory enforcement of the law, though the law is neutral on its face, affronts constitutional principles of equality. *Yick Wo v. Hopkins,* 118 U.S. 356, 373–74, 6 S.Ct. 1064, 1072–73, 30 L.Ed. 220 (1886). To require plaintiff to go through the appellate process to the board of adjustment would be futile, as it is the proclaimed intention of the city fathers to defeat plaintiff's application.

In finding that plaintiff is likely to succeed on the merits of its case, the court

**1480**

notes that this case is distinguishable from others, where, for example, the issues were the facial validity of zoning laws restricting but not eliminating "adult" establishments, *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976), or the facial validity of a regulatory scheme requiring all motion pictures to be examined by the government before their public release. *Times Film Corporation v. City of Chicago,* 365 U.S. 43, 47, 81 S.Ct. 391, 393, 5 L.Ed.2d 403 (1961). Here, the only issue is whether a facially valid regulatory scheme has been selectively applied to deprive plaintiff of the right to exercise fundamental constitutional freedoms. It is on this issue that the court finds that plaintiff is likely to succeed on the merits.

Next, the court must consider whether plaintiff will suffer irreparable injury if the injunction is not granted. On this issue, there is no question but that such injury will be suffered. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976).

On the issue of whether the public interest will best be served by issuance of an injunction, the court finds plaintiff's position convincing. The injunction will vindicate the constitutional right of free expression, a right which is "powerful medicine" in our diverse and populous society. *Cohen v. California,* 403 U.S. 15, 24, 91 S.Ct. 1780, 1787, 29 L.Ed.2d 284 (1971). As the Supreme Court noted in *Cohen,* free expression

> is designed and intended to remove governmental restraints from the arena of public discussion, putting the decision as to what views shall be voiced largely into the hands of each of us, in the hope that use of such freedom will ultimately produce a more capable citizenry and more perfect policy and in the belief that no other approach would comport with the premise of individual dignity and choice upon which our political system rests.

Finally, the court notes that no party will be disserved by issuance of the injunction. All the injunction will do is bar the City of Paterson from improperly using its zoning laws to suppress the exercise of fundamental liberties. No party is harmed by such limited judicial intervention.

As of this moment, even the defendants do not know whether or not the materials to be offered by plaintiffs will be obscene in violation of the applicable community standards. *See Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). If such standards are violated, defendants have an appropriate remedy. The present posture of the defendants is clearly a prior restraint of free speech, no matter how it may be disguised.

This case does not involve an effort by a municipality to restrict or control adult book stores, but rather through indirection to prohibit them. No case has ever upheld a blanket prohibition of this type. No matter what the community standard may be, the Constitution does not permit those who wish to sell and those who wish to buy to be totally barred from pursuing their interests without first determining whether the law has been violated.

For the foregoing reasons, plaintiff's application for a preliminary injunction is granted and defendants are directed to issue the necessary certificate of occupancy to plaintiff.