201 N.J. Super. 79 (1985)
492 A.2d 1020
JOANNE B. ARENA AND ALFRED E. ARENA, PLAINTIFFS-RESPONDENTS,
v.
HENRY I. SAPHIER, M.D., AND WOMEN'S MEDICAL SERVICES, DEFENDANTS-APPELLANTS, AND JOSEPH RIGGS, M.D., AND JOSEPH A. RIGGS, M.D., P.A., A PROFESSIONAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued April 2, 1985.
Decided May 1, 1985.
*80 Before Judges MICHELS, PETRELLA and BAIME.
Richard E. Brennan argued the cause for appellant Saphier (Shanley & Fisher, attorneys; Lisbeth A. Warren, on the brief).
William C. Cagney argued the cause for appellant Riggs (Markey, Dailey & Cagney, attorneys; William C. Cagney, on the brief).
Jo Ann Burk argued the cause for respondents (Stryker, Tams & Dill, attorneys; Jo Ann Burk, on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
*81 We granted defendants' motion for leave to appeal from an interlocutory order of the Superior Court, Law Division to consider novel questions pertaining to the scope of the psychologist-patient privilege within the context of the pretrial discovery process. This is a medical malpractice action in which it is alleged that defendants failed to properly diagnose and treat plaintiff's ectopic pregnancies resulting in the loss of her fallopian tubes and consequent inability to conceive. Among other things, plaintiff seeks damages for the emotional distress and acute depression allegedly caused by defendants' negligent conduct. At issue is whether the consultation notes of plaintiff's psychologist who treated her for a lengthy period of time both before and after her ectopic pregnancies are protected from pretrial disclosure by the provisions of N.J.S.A. 45:14B-28. The trial judge entered an order precluding discovery of these materials. We disagree and reverse.
We hold that a psychologist may be compelled to reveal relevant confidences of treatment when the patient tenders her mental or emotional condition in issue during the course of litigation. Under such circumstances, the patient's communications to her psychotherapist should not be enshrouded in the veil of absolute privilege. Rather, important public policy considerations favoring liberal pretrial discovery compel disclosure of all relevant information. Nevertheless, we are not insensitive to the countervailing necessity of protecting the patient from needless humiliation, harassment and exposure. In our view, these antithetical interests can best be accommodated by the trial court's thorough in camera inspection of the consultation notes to determine their relevance.
The facts need not be recounted at length. Plaintiff and her husband instituted separate actions against her two treating physicians and their respective professional corporations. The complaints were subsequently consolidated. The record reflects that plaintiff was under the care of Dr. Saphier, an *82 obstetrician and gynecologist, in the summer and autumn of 1980. According to plaintiff's complaint, Dr. Saphier initially failed to timely diagnose a left fallopian tube ectopic pregnancy. As a result, she was hospitalized and a salpingectomy was performed resulting in the loss of plaintiff's left fallopian tube.[1] Plaintiff further claims that later in the same year Dr. Saphier failed to diagnose a right fallopian tube ectopic pregnancy. Concerned with what she perceived to be Dr. Saphier's negligence, plaintiff sought consultation with Dr. Riggs, a gynecologist. According to her complaint, Dr. Riggs did not immediately recognize her condition. It is claimed that his failure to promptly diagnose her ectopic pregnancy coupled with Dr. Saphier's initial negligence resulted in the removal of plaintiff's right fallopian tube and ovary.
In both complaints, plaintiff seeks damages for pain and suffering, medical expenses, loss of earnings and permanent injury by virtue of the loss of her capacity to conceive. In addition, plaintiff's husband seeks damages for loss of services and consortium. He further contends that his rights were permanently impaired because of his wife's present infertility. Both plaintiff and her husband candidly acknowledge that her present psychological condition is directly in issue by virtue of their allegations of mental anguish and depression caused by defendants' negligence. In his depositions, plaintiff's husband testified that his wife suffers from acute depression and is a "different person" since the operations. In a similar vein, plaintiff related that she is frequently depressed and harbors deep anxiety pertaining to her future. These allegations were substantially corroborated in a report prepared by plaintiff's expert witness, a psychiatrist.
The present appeal concerns defendants' attempt to obtain certain consultation notes of plaintiff's treating licensed psychologist, *83 Irene Rapaport. It is undisputed that plaintiff consulted with Ms. Rapaport between 1974 and 1980. It would appear that psychotherapy treatment was relatively intense during this period of time, plaintiff visiting the psychologist's office on a weekly basis. Unfortunately, the sparse record is largely uninformative with respect to the reasons for such treatment. Apparently, plaintiff was having marital problems with her first husband at the time. In any event, plaintiff re-instituted consultations with Ms. Rapaport on January 9, 1981. According to plaintiff, she is currently under treatment for her depressive reaction resulting from her inability to conceive. We note that plaintiff has expressed her intention to have Ms. Rapaport appear as a witness and testify on her behalf. Although plaintiff characterizes Ms. Rapaport as a "fact witness," it is abundantly clear that she will testify with respect to her patient's depressive reaction following the removal of the latter's fallopian tubes.
Subsequent to plaintiff's deposition, counsel for defendant Saphier requested authorization for the release of Ms. Rapaport's records. An authorization was executed by plaintiff and ultimately forwarded to the psychologist. Ms. Rapaport responded with an edited summary of two office visits. The first memorialized a telephone conversation between the psychologist and Dr. Saphier in which the latter allegedly stated that there was no possibility of an ectopic pregnancy. The excerpt from the second visit stated in conclusory terms that plaintiff continued to suffer from depression caused by her inability to conceive. The document reflects that other materials were deleted because of their alleged lack of pertinence.
Following receipt of these consultation notes, defendant's attorney demanded copies of all records in accordance with the terms of the authorization. In response, plaintiff's counsel adopted the position that all consultation notes pertaining to treatments prior to August 1980 were irrelevant and, hence, not discoverable. Thereafter, Ms. Rapaport's records were subpoenaed. Pursuant to the agreement of counsel, the return date of *84 the subpoena was adjourned to permit plaintiff to apply for a protective order precluding the discovery of privileged material pursuant to R. 4:10-2(a) and R. 4:10-3.
The trial judge subsequently rendered an oral opinion in which he held that the psychologist-patient privilege had been waived because plaintiff's mental and emotional condition constituted a material element of her claim for damages. The court further concluded that prior instances of treatment were relevant with respect to the questions of cause and aggravation of plaintiff's condition. The trial judge thus directed that Ms. Rapaport's office logs and records pertaining to plaintiff's treatment prior to 1980 be disclosed. However, the court issued a protective order precluding discovery of consultation notes and letters plaintiff had written to Ms. Rapaport during the course of her treatment. Although the order was not specific with respect to dates, we construe it as protecting only those records bearing upon plaintiff's treatment between 1974 and 1980. We note in that regard that plaintiff voluntarily supplied all records with respect to subsequent treatment. The order is also somewhat ambiguous with regard to whether deposition testimony may be elicited pertaining to plaintiff's confidential communications to her psychologist during the earlier period of time. In that regard, the order provides that Ms. Rapaport's "conclusions as to diagnosis, causation, prognosis, aggravation, and nature of treatment" may be the subject of inquiry. However, the order further reads that "such information is not discoverable through consultation notes" of treatment sessions.
Initially, we reject defendants' argument that the confidential communications between plaintiff and her psychologist were not privileged. In support of that contention, defendants cite N.J.S.A. 2A:84A-22.4. That statute provides in pertinent part that "[t]here is no privilege under this act in an action in which the condition of the patient is an element or factor of the claim...." The principal thrust of defendants' argument is *85 that the statutory psychologist privilege is subject to the provisions of N.J.S.A. 2A:84A-22.4, which mandate full pretrial disclosure when the patient's mental or emotional condition is placed in issue. Defendants contend that there is no privilege under such circumstances and, therefore, questions pertaining to waiver are essentially irrelevant.
We disagree. In our view, N.J.S.A. 2A:84A-22.4 is not controlling. Rather, that statute was enacted in 1968 as part of the legislative scheme establishing the physician-patient privilege. The legislative history pertaining to N.J.S.A. 2A:84A-22.4 was described in Lazorick v. Brown, 195 N.J. Super. 444, 451-452 (App.Div. 1984) and need not be summarized here. Suffice it to say, the statute was designed to continue the policy which existed prior to enactment of the physician-patient privilege and which allowed disclosure of a patient's medical condition when placed in issue in a legal action. Ibid. See also Hague v. Williams, 37 N.J. 328, 334-336 (1962).[2]
In contrast, the psychologist-patient privilege was created by the Legislature two years earlier. The privilege was adopted as part of a comprehensive statutory scheme designed to license and regulate practicing psychologists. This legislation and the subsequent enactment pertaining to the physician-patient privilege are wholly distinct and cannot fairly be read in pari materia. State v. DiCarlo, 67 N.J. 321, 325-326 (1975); International Broth. of Elec. Workers v. Gillen, 174 N.J. Super. *86 326, 329-330 (App.Div. 1980); Mascola v. Mascola, 168 N.J. Super. 122, 125-126 (App.Div. 1979). We cannot properly invoke the doctrine to "engraft the terms of one statute onto another merely because the general subject matters of the two enactments are similar." International Broth. of Elec. Workers v. Gillen, supra, 174 N.J. Super. at 330.
Moreover, we can readily conceive of a reasonable basis to distinguish between a physician treating a disease and a psychologist endeavoring to cure an emotional or mental problem. Cf. Kerr v. Kerr, 129 N.J. Super. 291, 295 (App.Div. 1974). The nature of psychotherapy might well justify a greater degree of confidentiality and protection than is generally afforded medical treatment of a physical condition. The nature of the psychotherapeutic process is such that full disclosure to the therapist of the patient's most intimate emotions, fears and fantasies is required. The patient rightfully expects that his personal revelations will not generally be subject to public scrutiny or exposure.[3] We recognize that "[m]any physical ailments might be treated with some degree of effectiveness by a doctor whom the patient did not trust, but a [psychologist] must have his patient's confidence or he cannot help him." Taylor v. United States, 222 F.2d 398, 401 (D.C. Cir.1955). Thus, the psychologist-patient privilege has won legislative recognition in many states in the face of legal antipathy toward privileges in general and the physician-patient privilege in particular.[4] So too, *87 judicial decisions in other jurisdictions disclose a clear trend toward greater acceptance of the psychologist-patient privilege. See, e.g., In re Zuniga, 714 F.2d 632, 638-639 (6 Cir.1983), cert. den. ___ U.S. ___, 104 S.Ct. 426, 78 L.Ed.2d 361 (1983); Taylor v. United States, supra at 401; In re Lifschutz, 2 Cal.3d 415, 85 Cal. Rptr. 829, 842, 467 P.2d 557, 570, n. 20 (Sup.Ct. 1970); In re B., 482 Pa. 471, 394 A.2d 419, 425 (1978). See also Chafee, "Privileged Communications: Is Justice Served or Obstructed by Closing the Doctor's Mouth on the Witness Stand," 52 Yale L.J. 607 (1943); Louisell, "The Psychologist in Today's Legal World: Part II," 41 Minn.L.Rev. 731, 731-732 (1957).
This distinction was implicitly recognized by our Legislature when it enacted N.J.S.A. 45:14B-28. That statute reads as follows:
The confidential relations and communications between and among a licensed practicing psychologist and individuals, couples, families or groups in the course of the practice of psychology are placed on the same basis as those provided between attorney and client, and nothing in this act shall be construed to require any such privileged communications to be disclosed by any such person.
By its express terms, the statutory protection accorded to confidential communications between a psychologist and his patient is coterminous with that provided under the attorney-client privilege. Cf. Rosegay v. Canter, 187 N.J. Super. 652, 655 (Law Div. 1982). We, thus, conclude that the unqualified exemption provided by N.J.S.A. 2A:84A-22.4 is limited to communications between a doctor and his patient and is not applicable here.
*88 Rather, we are of the view that the discoverability of the psychologist's consultation notes should be considered within the context of the more limited waiver doctrine applicable to the attorney-client privilege. In that regard, we point to our recent decision in United Jersey Bank v. Wolosoff, 196 N.J. Super. 553 (App.Div. 1984). There, we held that when confidential communications are made a material issue in a judicial proceeding, fairness demands waiver of the attorney-client privilege. Id. at 567. We noted the "inherent inequity in permitting [a litigant] to use the privilege as a sword rather than a shield." Ibid. Further, we expressed our concern that "[i]f permitted to do so, plaintiff could divulge whatever information is favorable to its position and assert the privilege to preclude disclosure of the detrimental facts." Ibid. We observed that "[t]he resulting half-truth that would be revealed might well be more disabling than a total distortion." Ibid. See also Brogan v. Passaic Daily News, 22 N.J. 139, 151-152 (1956); Sicpa No. America v. Donaldson Enterprises, Inc., 179 N.J. Super. 56, 61 (Law Div. 1981); Beecroft v. Point Pleasant Print. & Pub. Co., 82 N.J. Super. 269, 278-279 (Law Div. 1964); Aysseh v. Lawn, 186 N.J. Super. 218, 225 (Ch.Div. 1982). We, thus, concluded that there was a "legitimate need" for disclosure of such information, the communications were both "relevant and material" and the evidence could not be secured from any "less intrusive source." United Jersey Bank v. Wolosoff, supra, 196 N.J. Super. at 565, quoting from In re Koslov, 79 N.J. 232, 243-244 (1979). We recognized, however, that the resulting waiver was a qualified one and was dependent upon the extent to which the information sought was relevant to the issue presented. Specifically, we noted that "[w]holly irrelevant communications ... having no possible bearing on [the issues raised by plaintiff's pleadings] remain[ed] protected by the attorney-client privilege." United Jersey Bank v. Wolosoff, supra, 196 N.J. Super. at 567, n. 3. Recognizing that the relevance of the communications could not be decided in a factual vacuum, we directed that *89 all documents were to be submitted to the trial judge for his in camera inspection. Id. at 563, 568.
We are convinced that these principles apply with equal force here. As we have noted, the purpose of the psychologist privilege is to preclude the humiliation of the patient and the exposure of his most intimate thoughts and emotions. It has been said that the patient confides to his psychologist "more utterly than anyone else in the world.... Most patients who undergo psychotherapy know that is what will be expected of them, and that they cannot get help except on that condition." Taylor v. United States, supra at 401. The privilege is thus designed to facilitate the necessary free flow of communication. It would be too much to expect patients to freely confide in their therapist "if they knew that all they say  and all that the [psychologist] learns [from it]  may be revealed to the whole world from a witness stand." Ibid. On the other hand, when the patient himself discloses mental or emotional problems by instituting an action in which they are in issue, common notions of fairness clearly compel at least limited disclosure of otherwise confidential communications. See Lazorick v. Brown, supra, 195 N.J. Super. at 452. See also Munzer v. Swedish American Line, 35 F. Supp. 493, 497 (S.D.N.Y. 1940); City & County of San Francisco v. Superior Court, 37 Cal.2d 227, 231 P.2d 26, 28 (Sup.Ct. 1951); Meyer v. McDonnell, 40 Md. App. 524, 392 A.2d 1129, 1134-1135 (1978); State ex rel. McNutt v. Keet, 432 S.W.2d 597, 601 (Mo.Sup.Ct. 1968). In all fairness, a patient should not be permitted to establish a claim while simultaneously foreclosing inquiry into relevant matters. See "Model Psychotherapist-Patient Privileges," 4 Harv.J.Legis. 307, 322 (1968); Fisher, "The Psychotherapeutic Profession and the Law of Privileged Communications," 10 Wayne L.Rev. 609, 644 (1964). Rigid adherence to the letter of the privilege under these circumstances would promote suppression of the truth. See, e.g., State v. Briley, 53 N.J. 498, 506 (1969); In re Selser, 15 N.J. 393, 405-406 (1954).
*90 We are satisfied that a sensible accomodation of these mutually competing values requires limited pretrial disclosure of the communications between plaintiff and her treating psychologist to the extent that they are relevant to her present mental and emotional condition and its cause. Further, plaintiff should not be permitted to invoke the privilege "to render conclusive [her] own evaluation of the nature and character of the materials in question." United Jersey Bank v. Wolosoff, supra, 196 N.J. Super. at 568. Because the qualified or limited waiver of the privilege recognized here depends upon the content of the communications, we believe that the consultation notes and letters should be submitted to the trial judge for his in camera inspection to determine their relevance. See, e.g., Irval Realty v. Bd. of Pub. Util. Comm'rs, 61 N.J. 366, 375 (1972); State v. Kunz, 55 N.J. 128, 145 (1969); DeGraaff v. DeGraaff, 163 N.J. Super. 578, 583 (App.Div. 1978). We recognize that even this limited preliminary disclosure somewhat dilutes the effectiveness of the psychologist-patient privilege. Cf. State v. Boiardo, 82 N.J. 446, 467 (1980). Nevertheless, the intrusion is relatively minor when considered against the backdrop of our liberal discovery rules under which the "search for truth and justice is paramount." Huie v. Newcomb Hospital, 112 N.J. Super. 429, 432 (App.Div. 1970). See also Jenkins v. Rainner, 69 N.J. 50, 56-57 (1976); Lang v. Morgan's Home Equipment Corp., 6 N.J. 333, 338 (1951); Blumberg v. Dornbusch, 139 N.J. Super. 433, 437-438 (App.Div. 1976); Myers v. St. Francis Hospital, 91 N.J. Super. 377, 385 (App.Div. 1966).
Here, the trial judge sought to reconcile plaintiff's privacy interests with defendants' pretrial discovery rights by requiring disclosure of the psychologist's office logs and permitting limited inquiry into her "conclusions as to diagnosis, prognosis, aggravation and nature of treatment." However, he precluded defendants from reviewing the psychologist's consultation notes and letters pertaining to treatment of the patient between 1974 and 1980. We are convinced that the trial judge erred in that respect. It is entirely conceivable that all or *91 significant portions of the consultation notes and letters are relevant with respect to plaintiff's claim of mental anguish and depression. In our view, the relevance of these documents can best be determined only through a through in camera inspection by the trial judge. Accordingly, the Law Division's order precluding disclosure of the psychologist's consultation notes and letters with respect to plaintiff's treatment prior to 1980 is reversed. The appropriate documents are to be submitted to the trial judge for his in camera review. The trial court is to determine whether all or some of these materials are relevant to questions pertaining to plaintiff's present mental condition and, as such, are discoverable. We do not retain jurisdiction.
NOTES
[1] A salpingectomy is the surgical removal of a uterine tube. See 3 Schmidt, Attorneys' Dictionary of Medicine and Word Finder at S-14 (1984).
[2] We note that the common law did not recognize a physician-patient privilege. Hague v. Williams, surpa, 37 N.J. at 334. Prior to 1968, New Jersey had "no expressed public policy pointing to a general prohibition against testimonial revelation of information acquired during the physician-patient relationship...." Id. at 335. On the contrary, "our policy [was] to expose such information to view when it [was] relevant to the resolution of litigation." Id. at 335. The same philosophy did not apply with equal force to non-testimonial disclosure. Thus, a physician could be sued for "promiscuously disclos[ing] such information...." Ibid. An exception existed where the physical condition of the patient was made an element of a claim. In that event, "the public interest in an honest and just result assume[d] dominance over the individual's right of nondisclosure." Id. at 336.
[3] Of course, the need for confidentiality cannot be considered either absolute or decisive. A patient is entitled to freely disclose his symptoms and conditions in confidence except where public policy considerations mandate a different course. Cf. McIntosh v. Milano, 168 N.J. Super. 466, 490 (Law Div. 1979).
[4] See, e.g., Alaska Rules of Court, R. 504; Ala. Code § 34-26-2; Ariz. Rev. Stat. Ann. § 32-2085; Ark.Stat.Ann. § 28-1001, R. 503; Cal.Evid.Code § 1010 et seq.; Colo. Rev. Stat. § 13-90-107(g); Conn. Gen. Stat. Ann. § 52-146c et seq.; Delaware Rules of Evidence, R. 503; Fla. Stat. Ann. § 90-503; Ga. Code Ann. § 38-418; Hawaii Rev.Stat. Title 33, ch. 626, 1980 Special Rules Pamphlet, R. 504.1; Idaho Code § 54-2314; Ill. Rev. Stat., ch. 91 1/2, § 801 et. seq.; Ind.Stat. § 25-33-1-17; Ky.Rev.Stat. § 421.215; La.Rev.Stat. § 13:3734; Maine Rules of Evidence, R. 503; Md.Cts. & Jud.Proc.Code § 9-109; Mass. Gen. Laws Ann. ch. 233, § 20B; Mich. Comp. Laws Ann. § 330.1750; Minn. Stat. Ann. § 595.02; Miss.Code § 73-31-29; Mo. Rev. Stat.Ann. § 337.055; Mont. Code Ann. § 26-1-807; Neb. Rev. Stat. § 27-504; Neb. Rev. Stat. § 49.215 et. seq.; N.H. Rev. Stat. Ann. § 330-A:19; N.M.Rules of Evidence, R. 504; N.Y.Civ.Prac.Law and Rules § 4507; N.C. Gen. Stat. § 8-53.3; N.D.Rules of Evidence, R. 503; Okla. Stat. Ann. Tit. 12 § 2503; Ore.Rev.Stat. § 40.230; Tenn. Code Ann. § 24-1-207; Utah Code Ann. § 58-25-8; Vt. Stat. Ann. Tit. 12 § 1612; Va.Code § 8.01-400.2; Wash. Rev. Code § 18.83.110; Wis. Stat. Ann. § 905.04; Wyo. Stat.Ann. § 33-27-103. See also D.C.Code § 14-307.