Cynthia STAMY, Plaintiff,

v.

Susan PACKER, Ph.D. and Princeton University, Defendants.

Civ. A. No. 90–718 (JCL).

United States District Court,
D. New Jersey.

July 26, 1990.

Joseph A. Fortunato, Montclair, N.J., for plaintiff.

Diane M. Acciavatti, Voorhees & Acciavatti, Morristown, N.J., for defendant, Susan Packer.

## MEMORANDUM AND ORDER

FREDA L. WOLFSON, United States Magistrate Judge.

On January 16, 1990, plaintiff commenced an action against the defendants alleging, that while plaintiff was a student at Princeton, Dr. Packer committed acts of medical malpractice against plaintiff, and that Princeton University[1], Dr. Packer's employer, breached its contractual duties to the plaintiff. Plaintiff seeks both compensatory and punitive damages from the defendants, as well as attorney's fees and costs.

## FACTS

The undisputed facts reveal that Cynthia Stamy ("Stamy"), while a graduate student at Princeton University, sought treatment from the University's Counseling Center. The Counseling Center referred Stamy to Dr. Susan Packer ("Packer") for therapy. Dr. Packer is licensed by the State of New Jersey to practice psychology and maintains a private practice in addition to her work at Princeton University. In November of 1984, Stamy came under Dr. Packer's care and treatment. In June of 1985, Stamy continued her therapy with Dr. Packer as a private patient since she was no longer a student at Princeton University.

Dr. Packer contends that in September of 1986, the doctor/patient relationship was mutually terminated. Thereafter, in October of 1986, Stamy and Dr. Packer mutually entered into a personal sexual relationship. The plaintiff maintains, however, that the therapeutic relationship never officially ended[2] and the personal relationship was not mutually agreed upon but rather

---

1. Princeton University has not filed any papers in connection with defendant's motion.

2. This Court takes no position on this factual dispute. Whether plaintiff was a former or current patient of the defendant at the time of their personal relationship is not germane to *this* motion.

was the result of Dr. Packer's seduction of plaintiff.

## PROCEDURAL HISTORY

Subsequent to the filing of the complaint and the removal of this action from the state court to this court, a Rule 16 initial scheduling conference was held on April 12, 1990. At that time, Dr. Packer's counsel proposed the entry of a protective order regarding disclosure of discovery. However, plaintiff opposed such relief and the defendant was thereby directed to proceed by way of formal motion. Pending the resolution of this matter, counsel mutually agreed not to disclose any information revealed through discovery. This motion was filed on April 27, 1990 and made returnable May 21, 1990.

However, prior to the filing of the motion, on April 18, 1990, the plaintiff contacted a current patient of Dr. Packer's by sending a card which contained the plaintiff's name and telephone number. The current patient, Archer Clark Sinclair, alerted Dr. Packer to this attempted contact, and Dr. Packer, in turn, notified her counsel. On April 19, 1990, defendant moved before the Hon. John C. Lifland, U.S.D.J. for a temporary restraining order to prohibit the plaintiff from contacting former or current patients of Dr. Packer. The order was entered by consent pending the resolution of this motion.

Presently before the Court is defendant's motion for a protective order and to seal the court's file. In addition, this Court is asked to decide if plaintiff may contact Dr. Packer's current or former patients. In responding to plaintiff's opposition to her motion for a protective order, the defendant raises the issue whether she may disclose information from other patients who are not parties to this suit, thereby waiving *their* doctor/patient privilege. The Court having considered the moving papers, the opposition thereto, and the argument of counsel, makes the following findings.

## I. PROTECTIVE ORDER

The Court in its discretion can enter a protective order upon a showing of good cause. *Fed.R.Civ.P.* 26(c). The party seeking the protective order bears the burden of persuasion. *See Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1121 (3d Cir.1986), *cert. denied,* 484 U.S. 976, 108 S.Ct. 487, 98 L.Ed.2d 485 (1987). In *Cipollone,* the court established that in order to overcome the presumption of open and public disclosure and to satisfy a showing of good cause, the movant must demonstrate a particular need for protection. *Cipollone,* 785 F.2d at 1121. The court further emphasized that "[b]road allegations of harm, unsubstantiated by specific examples of articulated reasoning, do not satisfy the Rule 26(c) test. Moreover, the harm must be significant, not a mere trifle." *Id.* at 1121.

In the instant case, Dr. Packer asserts that a protective order is necessary to prevent public dissemination of the fact of her sexual orientation, and that she conducted a personal relationship with plaintiff. In sum, the defendant cites four areas of harm which warrant that discovery be made subject to a protective order: (1) danger to former and current patients, (2) economic harm, (3) embarrassment and (4) inability to fully defend the action.

### (1) *Danger to Patients*

Dr. Packer certifies that if her current patients become aware of her sexual orientation and the fact that she had a relationship with a patient, it would destroy her ability to treat these patients. Dr. Packer maintains that it is essential for successful treatment, that she, as the therapist, retain the trust she has slowly developed with her patients. Defendant further attests that it is imperative, especially in her treatment of victims of childhood sexual abuse,[3] to create a safe environment for the patient and that if her sexual orientation were to become known to these and other female patients, it would not only destroy the patients' trust in Dr. Packer but would also eradicate the feeling of "protection" cre-

---

3. Dr. Packer certifies that she has three such    patients. (Packer Certif., ¶ 9).

ated for these patients. (Packer Certif., ¶¶ 8 through 13).

It is defendant's personal and professional belief, citing to several authorities, that, in ascertaining the cause of a patient's problems, the therapist must understand and explore a patient's past experiences with significant others and the typical ways in which a patient relates to people in her current environment. Dr. Packer avers that disclosure of her sexual preference would impair the transference [4] utilized in the psychoanalytic technique. The therapist protects and maintains the transference by preserving a sense of neutrality. To that end, it is crucial that a patient not possess personal information about the therapist. (Packer Certif., ¶ 22 through 34). Consequently, defendant, for professional reasons, does not disclose her sexual orientation to her patients. (Packer Certif. ¶ 32).

In addition, defendant fears that disclosure would damage the successful treatment of her *former* patients. Defendant states that the positive feelings of respect, like, and trust would be erased by disclosure. The negative effects that would result could undermine these patients' confidence in the gains made through therapy. (Packer Certif., ¶ 34).

In opposition, plaintiff states that defendant's certification is self-serving and conclusory. Plaintiff's counsel argues that the Court should disbelieve defendant's concern for her patients. However, plaintiff's sense of disbelief is not based upon any information other than plaintiff's obviously embittered experience with defendant. Plaintiff's counsel raises serious unsubstantiated allegations regarding defendant's patients and therapeutic techniques. Specifically, plaintiff states "Dr. Packer takes on sexual abuse cases 'knowing' that the patients would have a problem relating to and completing the transference process with a therapist who they saw as a sexual predator." (Plaintiff's Brief, p. 5). Plaintiff also certifies that contrary to what Dr. Packer states, defendant was open about her homosexuality to the University community and patients. (Stamy Certif., ¶ 15). Stamy relies on conversations she had with Carla Hesse, a recent patient of Packer, and letters sent by defendant to plaintiff (which were not submitted to this Court in connection with this motion). Dr. Packer denies plaintiff's allegations and in rebuttal certifies that no such information was revealed during Hesse's therapy, but was revealed during the friendship that followed the culmination of Hesse's therapy. (Packer, Certif., ¶ 8).

### (2) *Economic Harm*

In addition to the potential harm to her patients, Dr. Packer fears that disclosure of her sexual orientation would jeopardize her private practice and her career with the University. In response, plaintiff points out that since Princeton University is a co-defendant it is already aware of the allegations raised against the defendant.

However, defendant is not simply concerned about economic losses resulting from University sanctions, but rather fears that her ability to function in her various roles at the University, would be severely impaired by disclosure. (Packer Certif., ¶ 36). Dr. Packer serves as the Associate Director of the Counseling Center and represents the Center on various University committees. In addition, she is involved in outreach programs in the University community and supervises trainees at the Center. (Packer Certif., ¶ 35–36). Thus, defendant argues that the University would terminate her, not because of plaintiff's allegations, but because of her inability to function effectively.

Plaintiff's opposition to defendant's proffer does not address defendant's claims of potential harm, but rather speaks to mea-

---

**4.** Defendant directs the Court to the clinical definition of transference as "the expression of feelings, drives, attitudes, fantasies and defenses toward a person in the present which do not befit that person but are a repetition of the actions originated in regard to significant persons of early childhood, unconsciously displaced onto figures in the present. The two outstanding characteristics of the transference reaction are: it is a repetition and it is inappropriate." Ralph Greenson, *Technique and Practice of Psychoanalysis* (1967).

sures beyond the scope of this Court's review. Namely, plaintiff attacks defendant's qualifications and urges that she no longer be permitted to practice or teach. (Stamy Certif., ¶ 23 through 24). At present, there is an ongoing investigation of Dr. Packer by the N.J. Board of Psychological Examiners resulting from a complaint filed by the plaintiff. On this motion, the Court will not involve itself in these matters or in plaintiff's personal crusade against defendant. Rather, the Court's decision is limited to whether defendant has met the *Cipollone* standard of making a sufficiently particularized showing to justify a finding of "good cause" to obtain a protective order. *See Cipollone v. Liggett Group, Inc.,* 113 F.R.D. 86, 90 (D.N.J.1986), *aff'd,* 822 F.2d 335 (3d Cir. 1987).

### (3) *Embarrassment*

Aside from basic embarrassment, Dr. Packer presages the stigmatization and abuse that would flow if her homosexuality were made public through this litigation. Plaintiff does not dispute the discrimination that is visited upon homosexuals in our society, but contends that Dr. Packer's fears are disingenuous since she publicizes her sexual preference. Before the Court are two very different versions of Dr. Packer's openness on this issue.

Plaintiff points to (1) a gathering held at a Professor Englestein's house attended by female professors, graduate students, and research academics from the University in which the conversation focused on homosexual issues (Stamy Certif., ¶ 13), (2) a conversation with former patient, Carla Hesse (Stamy Certif., ¶ 14), and (3) a conversation between plaintiff and defendant, wherein defendant stated she "checked out" the physiques of several students while exercising at the Princeton Dillon Gym (Stamy Certif., ¶ 14).

In opposition, defendant certifies that (1) the gathering was not, as plaintiff implies, a gay gathering, but was a holiday gathering for a group of women friends and colleagues who shared an interest in women's studies, and that, aside from Professor Engelstein, no one else present was aware of defendant's homosexuality, nor did defendant behave in such a way that people present would naturally assume defendant was homosexual (Packer Reply Certif., ¶ 9); (2) Carla Hesse became aware of defendant's sexual orientation following Hesse's therapy and after the two had become close friends; (3) to the extent that Hesse revealed defendant's sexual orientation to others, she did so without defendant's consent (Packer Reply Certif., ¶ 11), (4) defendant went to the gym to exercise, not to "check out" other female students; and (4) defendant arranged a schedule that would avoid both plaintiff's and defendant's presence at the gym at the same time (Packer Reply Certif., ¶ 10).

Despite the obviously disparate versions of the facts, the Court is able to glean that, even if defendant was "open" about her sexual orientation, disclosure was limited to a very select group of people whom she could trust to maintain her privacy.

### (4) *Inability to Defend the Action*

Lastly, defendant submits that absent a protective order she will be prevented from adequately defending the action. In defendant's initial moving papers, she did not articulate the obstacles she was facing. However, by way of reply, defendant's counsel has attested that three of Dr. Packer's colleagues had initially expressed a willingness to submit certifications on behalf of the defendant but thereafter reneged. (Acciavatti Certif., ¶ 15). Plaintiff postulates that this change of heart is due to third parties fearing public disclosure of information they wish to keep private. (Defendant's Reply Brief, p. 18).

However, defense counsel has also argued that a protective order would be rendered meaningless if the plaintiff were allowed to speak freely of her claims. Therefore, defendant maintains that plaintiff should be prohibited from disclosing any information regarding this lawsuit, even that independently known by her prior to

the commencement of this action.[5]

■ A protective order that prohibits disclosure of information obtained outside the court processes amounts to a prior restraint of one's freedom of speech. *See Rodgers v. United States Steel Corp.*, 536 F.2d 1001, 1007 (3d Cir.1976). Any prior restraint on the exercise of the First Amendment is inherently suspect, and therefore, the party seeking to impose the restraint carries a "heavy burden" of justifying its imposition. *See Southeastern Promotions Lt. v. Conrad*, 420 U.S. 546, 558–59, 95 S.Ct. 1239, 1246–47, 43 L.Ed.2d 448 (1975); *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419, 91 S.Ct. 1575, 1577, 29 L.Ed.2d 1 (1971); *New York Times Co. v. United States*, 403 U.S. 713, 714, 91 S.Ct. 2140, 2141, 29 L.Ed.2d 822 (1971); *E–Bru, Inc. v. Graves*, 566 F.Supp. 1476, 1478–79 (D.N.J.1983).

Although prior restraints on freedom of speech are not unconstitutional *per se,* courts have found that there are few exceptions. *See CBS, Inc. v. Young*, 522 F.2d 234, 238 (6th Cir.1975) (where disclosure of information would "pose a clear and present danger, or a serious or imminent threat to a protected competing interest."); *Rodgers*, 536 F.2d at 1007, citing, *New Jersey State Lottery Commission v. United States*, 491 F.2d 219, 222 (3d Cir. 1974) (en banc), *vacated on other grounds,* 420 U.S. 371, 95 S.Ct. 941, 43 L.Ed.2d 260 (1975) ("One is that the information is of such nature that it is not protected by the first amendment. . . . The second is that although the information ordinarily is protected by the first amendment, the agency applying the restraint is exempt from its strictures. . . . The third is that although the information is protected and the agency is not exempt from the first amendment, the restraint is only reasonably incidental to the achievement of another valid govern-

ment purpose"). In the instant case, defendant has failed to meet any of the aforementioned exceptions.

### (5) *Conclusion*

■ The Court is not ignorant of the discrimination that is directed at homosexuals. In addition to the Court's concern with the harms that could result to Dr. Packer, the Court is also concerned with safeguarding her patients from any damage that might result from public disclosure of Dr. Packer's sexual orientation. Although plaintiff vigorously disputes Dr. Packer's proffers of harm, this Court finds that based on the certifications of Dr. Packer, the requisite particularized showing of harm, justifying "good cause" for the granting of a protective order, has been made.[6] The Court also finds, however, that the proposed harms do not rise to a level that would justify the imposition of a gag order.

While a protective order can be imposed despite a certain amount of conjecture as to future harm, the First Amendment tolerates absolutely no prior restraints predicated on surmise or conjecture of untoward consequences. *See Bertot v. School District No. 1, Albany County Wyoming*, 522 F.2d 1171, 1183 (10th Cir.1975). *In Reliance Insurance Company v. Barron's*, 428 F.Supp. 200 (S.D.N.Y.1977), the court stated that, "[p]ublic policy and the spirit of the first amendment require that any prior restraint be avoided wherever possible." *Id.* at 205. Therefore, the Court will enter a protective order regarding disclosure of discovery material, but will not prevent plaintiff from discussing any information she learned independent of this litigation.

## II. SEALING THE FILE

■ In addition to the protective order, defendant moves that the court's file, in-

---

**5.** Prior to the June 13, 1990 oral argument on these motions, defendant made no request for this extraordinary relief in any of the papers submitted, including the proposed form of order.

**6.** It is accepted that a protective order limiting disclosure of information procured through the discovery process does not run afoul of the First

Amendment. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984); *Cipollone*, 785 F.2d at 1119; *State of New York v. United States Metals Refining Co.*, 771 F.2d 796, 802–803 (3d Cir.1985); and *Tavoulareas v. Washington Post Co.*, 724 F.2d 1010, 1029 (D.D.C.1984).

cluding all pleadings and any depositions filed, be placed under seal. This general request is contrary to the common law right of access to judicial records. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597, 98 S.Ct. 1306, 1311, 55 L.Ed.2d 570 (1978). Defendant concedes that she must overcome this presumption favoring public access, but also notes that the right of access is not absolute and "[e]very court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper use." *Nixon*, 435 U.S. at 598, 98 S.Ct. at 1312. *See also Bank of America National Trust and Savings Association v. Hotel Rittenhouse Associates*, 800 F.2d 339, 343 (3d Cir.1986). Here, defendant carries the burden of demonstrating that the factors supporting secrecy outweigh the presumption of access. *Id.* at 344.

The Court finds that, as the record now stands, defendant has met this burden as it relates to information or documents that any non-party witness might produce. Non-parties would understandably hesitate to provide evidence or information if such evidence might either reveal their sexual orientation or may lend inferences to that effect. This type of information may play a crucial role in this case, but would not be adequately shielded by a protective order.

In addition, if any discovery produced pursuant to a protective order is incorporated into any pleading or document filed with the Court, then such submission shall be sealed. The Court is not, however, convinced that protection should be afforded to the entire court file. Should the Court find that circumstances change and court records are being used for an improper purpose, such as "to gratify spite or provide public scandal", *see Nixon*, 435 U.S. at 598, 98 S.Ct. at 1312, then at that time a complete sealing of the files may be appropriate.

At this time, any documents, testimony or affidavits supplied by a non-party shall be sealed. Furthermore, any party incorporating into a pleading or document, information traceable to a non-party who has provided discovery under seal, or any information supplied pursuant to a protective order, shall note that fact on the pleading or document being filed or submitted. Such pleading or document shall then be sealed by the Court.

## III. DOCTOR/PATIENT PRIVILEGE

In connection with defendant's motion for a protective order, defendant questions her ability to disclose information revealed to her by her patients, which would thereby waive such *non-party's* patient/psychologist privilege. Defendant contends that such disclosure is necessary in order to rebut plaintiff's allegations. Since this Court has decided to grant plaintiff's motion for a protective order without the necessity for further revelations by defendant, the question of waiver is moot on this application. However, defendant also maintains that it may be impossible to adequately defend this case without revealing confidential communications of her patients, especially Archer Clark Sinclair and Carla Hesse. The Court makes the following observations.

The Court must look to state law when jurisdiction is based on diversity. *Fed. R.Evid.* 501. The applicable New Jersey statute dealing with the patient/psychologist privilege is found at *N.J.S.A.* 45:14B–28 which provides:

> The confidential relations and communications between and among a licensed practicing psychologist and individuals, couples, families or groups in the course of the practice of psychology are placed on the same basis as those provided between attorney and client, and nothing in this act shall be construed to require any privileged communication to be disclosed by any such person.

The rationale behind the privilege is to encourage freedom of consultation on the part of the patient by protecting confidential communications from disclosure. *Fitzgibbon v. Fitzgibbon*, 197 N.J.Super. 63, 68, 484 A.2d 46 (Ch.Div.1984). Therefore, it is not surprising that only the *hold-*

er of the privilege may waive its protection. *Fitzgibbon,* 197 N.J.Super. at 68.[7]

■ The recognized exceptions to this general rule all share a common theme—the holder has either placed her condition in issue or the holder has placed the party seeking the waiver in a position where she is forced to defend herself. *See Arena v. Saphier,* 201 N.J.Super. 79, 88, 492 A.2d 1020 (App.Div.1985) (where the court found that when the patient places his mental or emotional condition in issue that patient waives the privilege). The court in *Arena,* based its holding on the same waiver principles applicable to the attorney-client privilege, *United Jersey Bank v. Wolosoff,* 196 N.J.Super. 553, 483 A.2d 821 (App.Div. 1984), rather than the general doctor/patient waiver found in *N.J.S.A.* 2A:84A–22.4; *See also State v. McBride,* 213 N.J.Super. 255, 517 A.2d 152 (App.Div.1986) (psychologist's notes and reports of a victim of aggravated assault should have been produced for *in camera* review in criminal trial to determine whether information was potentially exculpatory). Under this limited application of waiver, the only person to whom the doctrine could apply is Cynthia Stamy—she being the only party who has either placed her condition in issue or has placed the defendant in a position of defending her actions vis-a-vis her treatment of plaintiff.[8]

The Court can find no justifiable reason to pierce the privilege of any non-party patients, especially in light of the strong public policy in favor of confidentiality. *See Arena,* 201 N.J.Super. at 89, 492 A.2d 1020. There is simply no case law or public policy which would support defendant's proposition that she can waive the privilege of a non-party patient and this Court will not relieve defendant of her obligation to maintain those confidences.

## IV. CONTACTS WITH NON–PARTY PATIENTS

The plaintiff's attempt to contact Archer Clark Sinclair, one of Dr. Packer's current patients, precipitated an application by defendant to prohibit the plaintiff from initiating contact with any of defendant's present or former patients. Plaintiff maintains that Ms. Sinclair has information which is "unquestionably relevant and discoverable" to plaintiff's malpractice claim against the defendant. (Plaintiff Brief, p. 2) At oral argument, plaintiff's counsel argued that such discovery is relevant to show that an unsupervised meeting between plaintiff and Ms. Sinclair was part of the defendant's "campaign of seduction" against the plaintiff.

■ Initially, it should be noted that the standards for nonparty discovery require a stronger showing of relevance than for simple party discovery. *See Laxalt v. McClatchy,* 116 F.R.D. 455, 458 (D.Nev. 1986); *Dart Industries Co. v. Westwood Chemical Co.,* 649 F.2d 646, 649 (9th Cir. 1980); *Slater Steel, Inc. v. Vac–Air Alloys Corp.,* 107 F.R.D. 246, 248 (W.D.N.Y.1985). Furthermore, since the discovery sought from these nonparties relates to their counseling sessions with Dr. Packer, the Court must take notice of the highly private matters involved.[9] *See generally Lora v. Board of Education of the City of New York,* 74 F.R.D. 565 (E.D.N.Y.1977).

In deciding whether information should be protected under Rule 26(c), the Court must balance the competing interests that would be served by granting or denying the discovery. *See Doe v. American Red Cross Blood Services,* 125 F.R.D. at 650. First, the Court will address former and current patients, in general, and then con-

---

7. To protect this right of the patient, the State legislature has recently enacted specific guidelines for authorizing disclosure. *See N.J.S.A.* 45:14B–36.

8. It is clear that plaintiff does not argue that the patient/psychologist privilege prevents defendant from referring to communications between the plaintiff and herself.

9. This court need not reach the constitutional issue whether the nonparty patients are protected from giving discovery under the United States Constitution by a *right* of privacy since the court can adequately protect their interests pursuant to *Fed.R.Civ.P.* 26(c). *See Doe v. American Red Cross Blood Services,* 125 F.R.D. 646, 650 (D.S.C.1989).

sider the two patients who have been identified by the plaintiff.[10]

As stated *infra,* there are strong public policy grounds for ensuring the confidentiality and privacy of a person who seeks psychological treatment. In *Lora,* the court, in emphasizing this concern, cited to a passage from *Taylor v. United States,* 222 F.2d 398, 401 (D.C.Cir.1955):

> The psychiatric patient confides more utterly than anyone else in the world. He exposes to the therapist not only what his words directly express; he lays bare his entire self, his dreams, his fantasies, his sins, and his shame. Most patients who undergo psychotherapy know that this is what will be expected of them, and that they cannot get help except on that condition. * * * It would be too much to expect them to do so if they knew that all they say—and all that the psychiatrist learns from what they say—may be revealed to the whole world from a witness stand.

*Lora,* 74 F.R.D. at 571.

■ This Court finds that it would be quite distressing to a patient to be suddenly thrust into this bitterly contested lawsuit. The plaintiff, on balance, has not shown how Dr. Packer's patients in general *may* have information that is so relevant to her action to justify the embarrassment and possible psychological harm that would emanate to these *nonparties. See generally, Oslund v. United States,* 128 F.R.D. 110, 114 (D.Minn.1989).

Turning to Sinclair and Hesse, the Court finds these patients stand on a different footing. While there is concern for their privacy interests, these two individuals are already familiar to the plaintiff. In fact, Hesse, a former patient, even knew of Packer and Stamy's personal relationship. The identification of these two patients was not disclosed through the course of this litigation; rather plaintiff possessed independent knowledge of these women. Furthermore, the information these two patients may possess strikes of a higher rele-

vancy, since (1) Hesse, a former patient and personal friend of the defendant, was fully aware of the personal relationship between plaintiff and defendant, and it is this relationship which is the subject of this malpractice action, and (2) according to plaintiff, Sinclair's meetings with plaintiff were arranged by the defendant and thus form the basis of the alleged misconduct by the defendant.

The Court is willing to allow *counsel* for both parties to arrange a mutually agreeable method of contacting these two individuals, while at the same time minimizing the intrusion on these non-parties. Counsel are to explain, in an agreed upon fashion, the nature and reason for their communications with these women and then inform them that they are under no obligation to speak with counsel. Furthermore, Ms. Sinclair and Ms. Hesse shall be informed that their conversations with Dr. Packer during the therapeutic relationship are subject to a privilege, but that they may consent to waive that privilege in accordance with *N.J.S.A.* 45:14B–36. Counsel shall also agree to a prescribed set of questions to pose to Ms. Sinclair and Ms. Hesse. The Court will conference this issue with counsel only if counsel are unable, after expending good faith efforts, to resolve these matters without judicial intervention.

### ORDER

IT IS on this 26th day of July, 1990,

ORDERED that defendant's motion for a protective order is granted only as it pertains to any documents and information exchanged through discovery; and it is further

ORDERED that only documents or information produced by non-party witnesses, produced pursuant to a protective order, or documents incorporating information received from non-party witnesses, or incorporating information produced pursuant to a protective order, shall be placed under seal; and it is further

---

**10.** In addition to Archer Clark Sinclair, plaintiff has identified Carla Hesse, a former patient of Dr. Packer.

ORDERED that defendant's request to waive the psychologist/patient privilege in order to respond to plaintiff's opposition to the protective order is denied as moot; and any request to waive this privilege in the future is denied; and it is further

ORDERED that plaintiff is to refrain from any attempts to contact any past or present patients of Dr. Packer with the exception of Carla Hesse and Archer Clark Sinclair; and it is further

ORDERED that the contact of Hesse and Sinclair be limited to only counsel, that these non-parties be apprised of the nature of the contact, that they be told that they are not required to speak with counsel, that their communications with Dr. Packer during their therapy relationship are privileged, and that they may waive this privilege in accordance with *N.J.S.A.* 45:14B–46.