287 N.J. Super. 305 (1996)
671 A.2d 130
JOHN KINSELLA, PLAINTIFF-APPELLANT,
v.
MARY KINSELLA, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted December 13, 1995.
Decided February 6, 1996.
*308 Before Judges LONG and BROCHIN.
Lentz & Gengaro and Toby Solomon, attorneys for appellant (Christopher P. Gengaro, of counsel and on the brief).
Kummer, Knox, Naughton & Hansbury and Skoloff & Wolfe, attorneys for respondent (Michael C. Caulfield, on the brief).
The opinion of the court was delivered by BROCHIN, J.A.D.
Plaintiff John Kinsella and defendant Mary Kinsella are currently embroiled in a divorce action. The case has not yet been tried. The trial judge has entered an interlocutory order that "plaintiff and defendant shall each sign authorizations enabling the other party's counsel to obtain all their psychiatric, psychological and other therapists' records" and that "the records may be reviewed by the parties with their attorneys, but neither the records nor copies of the records shall be released to the parties...."
*309 We granted Mr. Kinsella's motion for leave to appeal from that order. Ms. Kinsella has not moved for leave to appeal. The provision of the order requiring her to turn over her "psychiatric, psychological, and other therapists' records" is not before us for review.
The Kinsellas were married in May 1977. Mr. Kinsella filed his complaint for divorce in January 1992. They have two minor children, John Jr., born on April 6, 1982, and Anastasia, born on September 14, 1985.
Mr. Kinsella's complaint charges his wife with extreme cruelty. He alleges that she would shout obscenities at him, "fly into a rage and begin yelling and screaming" at him. He also implies that she had an ongoing affair with another man.
Ms. Kinsella has counterclaimed for divorce on the ground of extreme cruelty. She also alleges a cause of action in tort and demands damages for physical and mental abuse by her husband. She charges him with committing continual physical assaults, including cutting her with razor blades, kicking and pummeling her in the head and in sensitive areas of her body, and breaking her bones. She also alleges that he has been physically and mentally cruel to their children. In the damage counts of her counterclaim, Ms. Kinsella asserts that her husband's behavior has caused her "serious and permanent physical, emotional and psychological injury, extreme distress and embarrassment" and that she "has in the past, and will in the future, be required to expend considerable sums of money for the treatment of the psychological and emotional injuries inflicted by the plaintiff." Ms. Kinsella also alleges that her husband has taken advantage of her "cultural and religious values" and financial and emotional dependence on him, "and has intentionally and purposely over a long period of time inflicted physical and emotional trauma upon her."
The trial judge's rationale for granting each of the parties access to the other's records is that

*310 the release of the psychological records for both parties may be a consideration as to the question of the `dangerousness' of this case and the unpredictability of future actions in any case....
... The history or lack of history of abusive behavior should be known now in determining future custody arrangements.
As previously mentioned, Ms. Kinsella does not challenge the trial court's order giving her husband access to her records. However, Mr. Kinsella opposes giving his wife access to his records. He argues that they are protected from her scrutiny by N.J.R.E. 505 and N.J.S.A. 45:14B-28, the psychologist-patient privilege. The rule and statute are identical. Each reads as follows:
The confidential relations and communications between and among a licensed practicing psychologist and individuals, couples, families or groups in the course of the practice of psychology are placed on the same basis as those provided between attorney and client, and nothing in this act shall be construed to require any such privileged communications to be disclosed by any such person.
There is no privilege under this section for any communication: (a) upon an issue of the client's condition in an action to commit the client or otherwise place the client under the control of another or others because of alleged mental incompetence, or in an action in which the client seeks to establish his competence or in an action to recover damages on account of conduct of the client which constitutes a crime; or (b) upon an issue as to the validity of a document as a will of the client; or (c) upon an issue between parties claiming by testate or intestate succession from a deceased client.
Ms. Kinsella responds that she is entitled to her husband's psychological records despite the privilege. Citing Fitzgibbon v. Fitzgibbon, 197 N.J. Super. 63, 484 A.2d 46 (Ch.Div. 1984), she argues that the privilege was properly subordinated to overriding concerns for the welfare of the children. Her brief asserts:
For example, if those records revealed admissions by the plaintiff with regard to the acts of violence he has committed against the defendant or the children, if those reports contain any admissions by him regarding his ability to control these alleged explosive violent outbursts, or any similar kinds of disclosures, all these would be highly relevant to any determination about custody or visitation involving the welfare of the children.
The admissions which may be found in these psychological records, Ms. Kinsella contends, will also be necessary to support her demand for a trial of her tort claims before a jury pursuant to Giovine v. Giovine, 284 N.J. Super. 3, 663 A.2d 109 (App.Div. 1995), *311 and those admissions are not available from other sources because Mr. Kinsella has denied that he committed the brutalities that she accuses him of. Furthermore, Ms. Kinsella argues, by the terms of N.J.R.E. 505 and N.J.S.A. 45:14B-28, no psychologist-patient privilege is applicable because this is, in the words of the second paragraph of the privilege, "an action to recover damages on account of conduct of the psychologist's client which constitutes a crime," and, in any event, by pleading extreme cruelty as his cause of action for divorce, Mr. Kinsella "has placed his mental and emotional state at issue, thus allowing his therapist's records to be discovered by defendant."
One published opinion, M. v. K., 186 N.J. Super. 363, 452 A.2d 704 (Ch.Div. 1982), implies that a statutory privilege  the marriage counseling privilege was the one actually involved  should be disregarded whenever child custody or visitation is at issue. The substance of its reasoning is that since children are "persons" within the meaning of the Fourteenth Amendment of the United States Constitution, they have a constitutional right to due process of law; that right encompasses the right to have matters affecting their welfare decided on the basis of all the relevant evidence; and they would therefore be deprived of due process by recognition of a privilege that excludes evidence which would be relevant to determining custody. See also Touma v. Touma, 140 N.J. Super. 544, 551, 357 A.2d 25 (Ch.Div. 1976) (noting that enforcement of the marriage counseling privilege would deprive litigants of their proprietary right to information and hamper the search for relevant evidence, thereby depriving them of due process.).
The welfare of children is at stake in every divorce case in which visitation rights and legal custody are decided. If "best interests of the child" were the talisman which, without more, automatically opened the door to discovery of the records of a party's psychological therapy, the psychologist's privilege, and presumably other similar privileges, would be nullities in every such case. We disagree with the reasoning of M. v. K. that would lead to that result. It proves too much. Litigants who are not *312 children are also "persons." All persons have the right not to be deprived of life, liberty or property without due process of law. The purpose of offering relevant evidence in court is to affect life, liberty, or property, and the function of a privilege is to exclude relevant evidence. The argument propounded in M. v. K. therefore leads to the conclusion that every successful assertion of a privilege violates a litigant's right to due process of law. But evidentiary privileges have been too firmly embedded in our statutes and common-law for too long for them now to be so freely overridden on constitutional grounds.
The psychologist-patient privilege was created by statute and confirmed by joint action of the Supreme Court and the Legislature. See N.J.S.A. 2A:84A-33 to -39. Its language places communications between a psychologist and his patient "on the same basis as those provided between attorney and client ..." N.J.S.A. 45:14B-28. The courts have recognized the important role of the psychologist-patient privilege:
The nature of the psychotherapeutic process is such that full disclosure to the therapist of the patient's most intimate emotions, fears and fantasies is required. The patient rightfully expects that his personal revelations will not generally be subject to public scrutiny or exposure. We recognize that "[m]any physical ailments might be treated with some degree of effectiveness by a doctor whom the patient did not trust, but a [psychologist] must have his patient's confidence or he cannot help him." Taylor v. United States, 222 F.2d 398, 401 (D.C. Cir. 1955). Thus, the psychologist-patient privilege has won legislative recognition in many states in the face of legal antipathy toward privileges in general and the physician-patient privilege in particular. So too, judicial decisions in other jurisdictions disclose a clear trend toward greater acceptance of the psychologist-patient privilege.
[Arena v. Saphier, 201 N.J. Super. 79, 86-87, 492 A.2d 1020 (App.Div. 1985) (footnotes omitted).]
The psychologist-patient privilege has usually been accorded the weight which these considerations command, and the cases in which it has been overridden generally fall into one of three well defined categories.
In criminal cases, statutory privileges may be subordinated to the defendant's constitutional right of confrontation. See e.g. Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 *313 (1974) (confidentiality of juvenile record); State v. L.J.P., 270 N.J. Super. 429, 442-43, 637 A.2d 532 (App.Div. 1994) (psychologist-patient privilege). However, whether a statutory privilege will be overridden even in a criminal case will depend on the results of weighing the potential significance of the privileged information to the defendant against the importance of the interests protected by the privilege-holder's claim to confidentiality. See Commonwealth v. Ritchie, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). Compare State v. L.J.P., supra (holding that disclosure should be allowed where psychologist's record tended to show that youthful victim freely admitted during therapy that she had fabricated sex assault charge, thereby rebutting her claim at trial that her recantation by letter had been coerced); State v. McBride, 213 N.J. Super. 255, 517 A.2d 152 (App.Div. 1986) (holding that disclosure should be allowed if psychologist's report, which was part of basis for physician's testimony, undermined physician's claim that complaining witness's blow on the head restored her memory of earlier injury allegedly inflicted by defendant) with State v. J.G., 261 N.J. Super. 409, 619 A.2d 232 (App.Div.) (holding that in a case of a father's aggravated sexual assault against his minor children, confidential communications by the victims to a crime victim counselor were protected by statutory privilege, N.J.S.A. 2A:84A-22.15, because there were no "compelling circumstances" for disclosure), certif. denied, 133 N.J. 436, 627 A.2d 1142 (1993); State v. Cusick, 219 N.J. Super. 452, 463, 530 A.2d 806 (App.Div.) (holding that disclosure of an 8-year old sexual assault victim's institutional records was properly withheld where information "could not have been used in any manner to impeach the testimony of the State's witnesses.... [and] there [was] no other information in the files which, if revealed to defendant, would have changed the outcome of the trial"), certif. denied, 109 N.J. 54, 532 A.2d 1118 (1989); State in the Interest of L.P., 250 N.J. Super. 103, 112, 593 A.2d 393 (Ch.Div. 1991) (holding that withholding notes of sexual assault victim's meeting with school psychologist was proper because of psychologist-patient privilege since the notes contained no verbatim statements of the victim); In re Maraziti, 233 N.J. Super. 488, *314 495-502, 559 A.2d 447 (App.Div. 1989) (holding that neither the Due Process nor the Confrontation Clause of the United States Constitution required disclosure of conversations between child abuse or neglect victims and their court-appointed law guardian).
In civil cases, information within the protection of the psychologist-patient privilege has been disclosed because of express or implied waiver. Thus, a plaintiff who claims damages for emotional distress and acute depression tenders his or her psychological condition in issue and, if the plaintiff is the patient, thereby waives the psychologist-patient privilege. Arena v. Saphier, 201 N.J. Super. 79, 492 A.2d 1020 (App.Div. 1985); Rosegay v. Canter, 187 N.J. Super. 652, 455 A.2d 610 (Law Div. 1982). In a child custody proceeding where a psychologist has administered a personality inventory test to both the husband and wife and then submitted his report to the judge, the psychologist-patient privilege will not prevent the disclosure of the test data to both parties if either the psychologist or the court will rely on the data and its disclosure will be in the child's best interests. Fitzgibbon v. Fitzgibbon, supra. Cf. Touma v. Touma, supra (marriage counselor cannot claim privilege when husband and wife have both waived in writing).
There may be grounds other than express or implied waiver for overriding the psychologist-patient privilege. By the terms of N.J.S.A. 45:14B-28 and N.J.R.E. 505, the psychologist-patient privilege is "placed on the same basis as those provided between attorney and client." That provision may imply that it is subject to similar or analogous exceptions which may be applicable in some child custody cases. Cf. United Jersey Bank v. Wolosoff, 196 N.J. Super. 553, 563, 483 A.2d 821 (App.Div. 1984) (Even in the absence of a specific exception to the attorney-client privilege, communications which would otherwise fall within its purview may sometimes be required to be revealed because of "overriding public concerns."). Richard J. Biunno, Current N.J. Rules of Evidence, comment 6 on N.J.R.E. 504 (attorney-client privilege) (1995).
*315 However, the present case lacks the necessary predicate for any exception to the psychologist-patient privilege. In In re Kozlov, 79 N.J. 232, 243, 398 A.2d 882 (1979), a case dealing with the attorney-client privilege, the Supreme Court held:
[T]here are necessary foundations to the valid piercing of any such privilege, one of which is absent here. There must be a legitimate need of the party to reach the evidence sought to be shielded. There must be a showing of relevance and materiality of that evidence to the issue before the court.... But it must also be shown ... to the satisfaction of "the trial judge, by a fair preponderance of the evidence including all reasonable inferences, that * * * the information * * * could not be secured from any less intrusive source."

[Id. at 243-44, 398 A.2d 882 (Citation omitted) (emphasis as in the Kozlov opinion).]
In Roe v. Roe, 253 N.J. Super. 418, 601 A.2d 1201 (App.Div. 1992), we applied this holding of Kozlov to a case analogous to the present one. Roe was a husband's appeal from a final order for the prevention of domestic violence. The order forbade the husband from "`returning to the scene of the domestic violence;' from having any contact with [the wife] or her relatives, except for making visitation arrangements; and grant[ed] custody of the children to both parties." Id. at 421-22, 601 A.2d 1201. Despite the fact that the case involved custody and visitation, we affirmed a ruling by the trial court sustaining the wife's claim of attorney's work-product privilege for a diary which she kept pursuant to instructions from her lawyer. We found that the ruling was within the trial court's discretion because, "[t]here was no showing that [the husband] could not obtain pertinent information to defend the domestic violence charge from a `less intrusive' source, or was in any way prejudiced in preparing for this hearing by the preclusive ruling." Id. at 433, 601 A.2d 1201 (citing Kozlov, supra, 79 N.J. at 243-44, 398 A.2d 882). Similarly in the present case, there has been no showing that the evidence which Ms. Kinsella seeks could not be found from a source less intrusive than the records of Mr. Kinsella's psychotherapy.
The evidence for proving Ms. Kinsella's allegations of spousal abuse should be provable by her medical records, her testimony, the testimony of other fact witnesses, and the testimony of psychologists *316 or psychiatrists retained or appointed to conduct appropriate investigations for purposes of this case. We therefore hold that disclosure of the record of Mr. Kinsella's psychotherapy in disregard of the psychologist-patient privilege is not justified either on the ground that custody and visitation may be at issue, or on the ground that, as Ms. Kinsella contends, she may be required to establish a prima facie case in order to be entitled to a jury trial of her marital tort claims.
We also reject Ms. Kinsella's argument that the privilege is inapplicable here because this is "an action to recover damages on account of conduct of the [psychologist's] client which constitutes a crime." Ms. Kinsella's inapplicability argument is based on a misleadingly incomplete quotation from the language of the statute and the evidence rule. The relevant language of the privilege, set out in a way that clarifies its meaning, reads in full as follows:
There is no privilege under this section for any communication:
(a) upon an issue of the client's condition
in an action to commit the client ...; or
in an action in which the client seeks to establish his competence; or
in an action to recover damages on account of conduct of the client which constitutes a crime; or
(b) upon an issue as to the validity of a document as a will of the client; or
(c) upon an issue between parties claiming by testate or intestate succession from a deceased client.
In other words, the exception for "an action to recover damages" on which Ms. Kinsella's inapplicability argument relies makes the privilege inapplicable only "upon an issue of the client's condition"; i.e., Mr. Kinsella's condition. Ms. Kinsella is seeking the records of her husband's psychotherapy to prove her condition, i.e., what he did to her, not his condition.
Ms. Kinsella's final argument is that the allegations of her husband's complaint charging her with extreme cruelty as a ground of divorce puts his psychological condition in issue and therefore waives his psychologist-patient privilege. Our divorce statute defines "extreme cruelty"

*317 as including any physical or mental cruelty which endangers the safety or health of the plaintiff or makes it improper or unreasonable to expect the plaintiff to continue to cohabit with the defendant;
....
[N.J.S.A. 2A:34-2(c).]
Objective evidence may be sufficient to prove that the defendant's conduct has "endanger[ed] the safety or health of the plaintiff"; but showing that that conduct has made it "improper or unreasonable to expect the plaintiff to continue to cohabit with the defendant" may require proof of the effect which the defendant's conduct has had on the plaintiff's state of mind. See Gazzillo v. Gazzillo, 153 N.J. Super. 159, 379 A.2d 288 (Chan.Div. 1977). The references in Mr. Kinsella's complaint to the specific acts which he attributes to his wife and characterizes as extreme cruelty indicate that he will have to prove the effect of those acts on his state of mind. As we have previously mentioned, a patient who puts his state of mind in issue waives the privilege of maintaining the confidentiality of relevant communications otherwise shielded by the psychologist-patient privilege. Arena v. Saphier, supra.
But that limited waiver does not give Ms. Kinsella or her attorney unrestricted access to the records of Mr. Kinsella's psychotherapy. Access should be limited to records approximately contemporaneous with the period during which he alleges his wife committed the acts of extreme cruelty upon which he relies, with some latitude, however, to explore whether the psychological condition which he attributes to acts of extreme cruelty existed prior to their alleged commission. However, before release to Ms. Kinsella of any privileged documents within the pertinent time period, they should be thoroughly inspected in camera by the trial judge. On the basis of that inspection, he should determine which, if any, of those documents are relevant to Mr. Kinsella's claim that he is entitled to a divorce on the ground of extreme cruelty. Only those documents which the judge decides are relevant should be released. The trial court should impose reasonable conditions on their release, use or disposition.
*318 The order appealed from is therefore reversed insofar as it requires the unrestricted disclosure of Mr. Kinsella's "psychiatric, psychological and other therapists' records," and the case is remanded for further proceedings not inconsistent with this opinion.