740 A.2d 172 (1998)
325 N.J. Super. 590
Edwin VALENTIN, Plaintiff,
v.
Gary BOOTES, et al., Defendants.
Superior Court of New Jersey, Law Division, Essex County.
Decided July 28, 1998.
Angelo R. Bianchi, Nutley, for plaintiff (Bianchi & Bianchi, attorneys).
John McGovern, Passaic, for defendant Gary Bootes (Anthony J. Fusco, attorney).
John C. Pidgeon, First Assistant Corporation Counsel, for defendant City of Newark (Michelle Hollar-Gregory, Corporation Counsel).
PAYNE, J.S.C.
Plaintiff Edwin Valentin alleges that, on December 1, 1994, he was accosted physically and threatened with a revolver by defendant Gary Bootes, an off-duty Newark police detective. Following the incident, Mr. Valentin filed a complaint in which he sought damages from Detective Bootes, the City of Newark, the Newark Police Department, and various senior police officers for the physical and emotional injuries that he allegedly sustained. Claims against the police defendants were premised, in relevant part, on allegations of negligent hiring and retention, as well as of deprivation of constitutional rights in violation of 42 U.S.C. § 1983.
*173 During the course of discovery, counsel for the City of Newark disclosed that Detective Bootes had undergone a psychological evaluation by Dr. Irving B. Guller, an independent psychologist, as part of the police hiring process. Counsel also disclosed that Detective Bootes had been reexamined by Dr. Guller on December 13, 1995 on the order of then-Deputy Police Chief Joseph J. Santiago, who referred Bootes to Dr. Guller for a further evaluation of his fitness to perform the role of a police officer following a number of charges of assault, including one that involved an alleged assault on a police officer. When Newark's counsel declined to produce the reports generated as the result of the examinations, plaintiff moved to compel their production. Following review of the reports in camera and oral argument in the presence of counsel for plaintiff, Detective Bootes, and the City, I have determined that the reports are discoverable, and therefore order their production. However, in order to afford Detective Bootes the opportunity to appeal from the order embodying this ruling, my order requiring production will be stayed for a period of ten days from entry or to the conclusion of defendant's appeal, should leave to appeal be granted. The reasons for my determination follow.
In its decision in Denis v. City of Newark, 307 N.J.Super. 304, 704 A.2d 1003 (App.Div.1998), a police assault case brought under the New Jersey Tort Claims Act, the Appellate Division affirmed the existence of a cause of action against a public entity for its independent negligence in hiring and/or retaining a police officer with known dangerous propensities. Id. at 312-13, 704 A.2d 1003. It justified its holding in the following terms:
Recognizing that liability may exist against a public entity under the Tort Claims Act for its negligent retention of a police officer who presents a clear public danger not only serves as an expression of societal disapproval of unjustifiable police violence, but also encourages public entities to impose appropriate sanctions in such circumstances.

[Id. at 314, 704 A.2d 1003.]
In the Denis case, the plaintiff had not been permitted by the trial court to review all documents relating to disciplinary history in the personnel file of defendant Jordan, the officer in question. On appeal, the Police Department argued that permitting the disclosure of the file "would impede the ability of the law enforcement community to conduct internal investigations and to assure candor and frankness of witnesses in those investigations." Id. After conducting an independent review of the file, the Appellate Division rejected defendants' argument that the file should be protected[1] and found the trial court's determination not to release the records to have been erroneous, stating:
For the most part, the materials we reviewed were incident reports, complainants' statements, preliminary and final notices of disciplinary action and reports on the dispositions taken. These materials are the only evidence supporting plaintiff's claim that defendants were aware of Jordan's past conduct. Without these records, plaintiff could not show that defendants knew of his dangerous propensities or his other *174 derelictions of duty, and could not establish a prima facie case of negligence against defendants. Thus, plaintiff demonstrated a strong need for the documents. We also note that the file contains no self-critical evaluative reports or reports of remedial measures instituted after Jordan was disciplined. Nor are there any statements by confidential informants. In these circumstances, we perceive no impediment to the complete release of Jordan's personnel file inasmuch as plaintiff's need for the material clearly outweighs defendants' claims of purported confidentiality.

[Id. at 315-16, 704 A.2d 1003.]
Cf. also Payton v. New Jersey Turnpike Authority, 148 N.J. 524, 691 A.2d 321 (1997), a case claiming liability on the part of a public employer for alleged sexual harassment by its employee, in which the New Jersey Supreme Court found materials relating to the employer's internal investigation of the alleged conduct to be generally discoverable, if an in camera review, a balancing of confidentiality interests against the need for disclosure, and appropriate redaction or other protection of materials that would compromise the efficacy of such employer investigations had taken place prior to disclosure.
Denis and Payton establish that, with some exceptions and conditions, documents relating to an employer's knowledge or investigation of its employee's conduct and fitness for employment are discoverable by a plaintiff asserting a claim of liability against the employer. However, neither Denis nor Payton involved the potential disclosure of psychological tests ordered by an employer such as those sought in this case. An issue, heretofore unresolved in New Jersey and largely unresolved elsewhere, therefore exists as to whether such documents should likewise be discoverable.
In the present case, the City asserts a form of executive or governmental privilege akin to that in Denis and Payton. It does not directly assert the psychologist privilege as the basis for its opposition to production of the reports of defendant Bootes' psychological testing. Nor could it. See, e.g., State v. L.J.P., 270 N.J.Super. 429, 438, 637 A.2d 532 (App.Div.1994); State in Interest of L.P., 250 N.J.Super. 103, 112, 593 A.2d 393 (Ch.Div.1991); State v. Barath, 169 N.J.Super. 181, 188, 404 A.2d 373 (Law Div.1979), aff'd 172 N.J.Super. 230, 411 A.2d 731 (App.Div.1980). At oral argument, I afforded counsel for Detective Bootes an opportunity to assert the psychologist privilege on Bootes' behalf,[2] and for purposes of this decision, I have assumed that the privilege will be asserted. That assertion does not change the result reached in this case.
The psychologist privilege, set forth in N.J.S.A. 45:14B-28 and Evid.R. 505, provides:
The confidential relations and communications between and among a licensed practicing psychologist and individuals, couples, families or groups in the course of the practice of psychology are placed on the same basis as those provided between attorney and client, and nothing in this act shall be construed to require any such privileged communications to be disclosed by any such person.
New Jersey's courts have accorded the privilege greater scope and effect than the physician-patient privilege. See, e.g., State v. L.J.P., supra, 270 N.J.Super. at 438-39, 637 A.2d 532; State v. McBride, 213 N.J.Super. 255, 269-70, 517 A.2d 152 (App. Div.1986); Arena v. Saphier, 201 N.J.Super. 79, 84-87, 492 A.2d 1020 (App.Div. 1985). The reason for the courts' greater protection of patient-psychologist communications lies in their recognition that the effectiveness of psychological therapy depends on the patient's willingness to disclose his or her "most intimate emotions, *175 fears and fantasies" and on the assurance that such disclosures will remain confidential. Arena, supra, 201 N.J.Super. at 86, 492 A.2d 1020.
However, the underpinnings to the privilege articulated by the court in decisions such as that in Arena are notably absent in this case. Unlike the statements of Joanne Arena, the communications by defendant Bootes to Dr. Guller were not made for purposes of therapy, but rather for testing. If this were a case in which the physician-patient privilege had been invoked, Bootes' communications clearly would be not be protected from disclosure, since the statute and rule embodying the physician-patient privilege define "patient" to mean a person seeking treatment or a diagnosis preliminary to treatment, and defendant Bootes was seeking neither. See N.J.S.A. 2A:84A-22.1(a); Evid.R. 506(a). See also N.J.S.A. 2A:84A-22.5; Evid.R. 506(e) (excepting from the privilege "information which the physician or the patient is required to report to a public official.") However, the psychologist privilege does not contain the exceptions enacted in connection with the physician-patient privilege. Moreover, as previously stated, the psychologist privilege is modeled on the attorney-client, not the physician-patient privilege. For these reasons, it is unclear whether our Supreme Court would find the distinction between treatment and testing, alone, sufficient to defeat the psychologist privilege. But see Fitzgibbon v. Fitzgibbon, 197 N.J.Super. 63, 69, 484 A.2d 46 (Ch.Div.1984) (finding Minnesota Multiphase Personality Inventory Test of parents conducted by court-appointed psychological expert as an aid in determining custody to be discoverable, in part, because not privileged).
However, the distinction that has just been discussed is not the only factor distinguishing the circumstances of this case from Arena and the other cases expressing its rationale. In addition, defendant Bootes knew that Dr. Guller's reports[3] would be disclosed to members of the Police Department. It can therefore be argued that Bootes had no reasonable expectation that his communications would remain confidential. Since the psychologist privilege applies only to "confidential" communications, a strong argument exists that the privilege is inapplicable to the reports of psychological testing conducted of defendant Bootes by Dr. Guller. A number of courts have accepted this argument. See Siegfried v. City of Easton, 146 F.R.D. 98, 101 (E.D.Pa.1992), discussed infra at pp. 601-03, 740 A.2d at pp. 177-79 (finding federal privilege did not apply to psychological testing of police officer); Miller v. Pancucci, 141 F.R.D. 292, 302 (C.D.Cal.1992) (same). See gen. Stephen M. Ryals, Discovery in Police Misconduct Litigation: Issues from the Plaintiff's Perspective, 575 PLI/Lit. 859, 876-77 (1997). Cf. also, e.g., J.N. v. Bellingham School Dist. No. 501, 74 Wash.App. 49, 871 P.2d 1106 (1994) (in a case alleging sexual assault by one student on another, holding that Washington's psychologist privilege did not apply to school placement testing of the accused by a psychologist because no reasonable expectation of privacy existed and discussing other Washington cases reaching similar conclusions).[4]
*176 If it is assumed that the privilege applies, other considerations requiring a different legal analysis arise. New Jersey courts have held that the psychologist privilege is not absolute.[5] It may be abrogated by a psychologist in response to a clear and present danger; it may be deemed waived when the patient places his or her mental status in issue; and it may be pierced when knowledge of psychological materials is necessary to preserve a criminal defendant's right to exculpatory evidence or when disclosure is necessary to preserve the best interests of a child. See generally Kinsella v. Kinsella, 150 N.J. 276, 302-04, 696 A.2d 556 (1997) (discussing relevant cases). The existence of the privilege may also be waived when the validity of conclusions based on psychological test results, themselves, is placed in issue. See Matter of Vey, 124 N.J. 534, 591 A.2d 1333 (1991), a challenge to the use by the Merit System Board of the New Jersey Department of Personnel of certain personality trait criteria established through psychological testing to determine unfitness for police work
An initial consideration, therefore, is whether or not the privilege was waived by defendant Bootes. The existence of waiver was discussed by the Appellate Division in its decision in Arena, supra, 201 N.J.Super. at 88-89, 492 A.2d 1020. In that case, the court held that records of plaintiff's treatment maintained by her psychologist were discoverable in a medical malpractice action in which plaintiff claimed emotional distress, since plaintiff had placed her mental status in issue. In reaching its conclusion, the court rejected any analogy to the physician-patient privilege, finding instead that "the discoverability of the psychologist's consultation notes should be considered within the context of the more limited waiver doctrine applicable to the attorney-client privilege." Id. at 88, 492 A.2d 1020. The court continued:
In that regard, we point to our recent decision in United Jersey Bank v. Wolosoff, 196 N.J.Super. 553, 483 A.2d 821 (App.Div.1984). There, we held that when confidential communications are made a material issue in a judicial proceeding, fairness demands waiver of the attorney-client privilege. Id. at 567, 483 *177 A.2d 821. We noted the "inherent inequity in permitting [a litigant] to use the privilege as a sword rather than a shield." Ibid. Further, we expressed our concern that "[i]f permitted to do so, plaintiff could divulge whatever information is favorable to its position and assert the privilege to preclude disclosure of the detrimental facts." Ibid. We observed that "[t]he resulting half-truth that would be revealed might well be more disabling than a total distortion." Ibid.... We, thus, concluded that there was a "legitimate need" for disclosure of such information, the communications were both relevant and material and the evidence could not be secured from any "less intrusive source." [Id. at 565, 483 A.2d 821,] quoting from In re Kozlov, 79 N.J. 232, 243-244, 398 A.2d 882 (1979). We recognized, however, that the resulting waiver was a qualified one and was dependent upon the extent to which the information sought was relevant to the issue presented.
[Arena, supra, 201 N.J.Super. at 88, 492 A.2d 1020.]
A problem with the use in the present case of the precedent just discussed arises, however, since defendant Bootes has not placed his mental or emotional state in issue. Rather, knowledge of Bootes' mental condition has been raised affirmatively by plaintiff's allegations against the City of Newark and its Police Department and officers of negligent hiring and retention and of § 1983 violations. That mental condition is likewise key to any defenses to these claims asserted on behalf of the City and the police, but is substantially irrelevant to defenses asserted on behalf of Bootes himself. For these reasons, it can be concluded that the courts' decisions in Wolosoff and Arena do not justify disclosure of the results of the psychological testing of Detective Bootes under a theory of "in-issue" waiver. Cf. Kinsella, supra, 150 N.J. at 307, 696 A.2d 556. Similarly, decisions such as that of the New Jersey Supreme Court in Matter of Vey, supra, a case in which plaintiff challenged the validity of conclusions drawn from psychological testing, are not precedential here, because no such challenge has been raised.
Of course, defendant Bootes may be found to have impliedly waived his right to assert the confidentiality of the records of his psychological testing as the result of his knowledge, at the time of testing, that the records would be disclosed to members of the Newark Police Department for their use in determining whether to hire or to retain him as a police officer. See discussion of confidentiality, as it relates to the applicability of the psychologist privilege, supra. In this connection, an argument could be made that Bootes' waiver was limited to the specific disclosures to the Police Department of which he can be deemed to have had knowledge. The response is, of course, that Bootes should have anticipated just the sort of related disclosure ordered here as the result of well-publicized litigation over police brutality, the frequency with which claims against municipalities arising out of negligent hiring and retention are asserted, and the evident relevance of the materials sought here to those claims. However, because I lack an evidential foundation for any reasoned consideration of the issue, I decline to premise this decision on implied waiver grounds, and therefore express no opinion as to the scope any waiver by defendant Bootes.[6] Other, stronger, bases exist for this decision.
As previously noted, New Jersey's courts have held that the psychologist privilege is not absolute and, in certain instances, have engaged in a balancing process to determine whether the privilege can be invoked to shield evidence from disclosure. In this case, a balancing of the *178 parties' need for the materials, their evident relevance to claims made and defenses asserted, and the parties' inability to obtain comparable materials through less intrusive sources compels disclosure of the reports at issue. See In re Kozlov, 79 N.J. 232, 243-44, 398 A.2d 882 (1979)[7]; Kinsella, supra, 150 N.J. at 299, 306-07, 696 A.2d 556 (adopting Kozlov in a case challenging the applicability of the psychologist privilege).
Without question, the parties need Dr. Guller's reports to prove their claims and defenses, and those reports have clear relevance to matters in issue in this case. Plaintiff's claims against the City in this case are explicitly based, in part, upon its alleged breach of its duty to properly psychologically and psychiatrically evaluate Bootes as a member of the Newark Police Department. See Complaint, Fifth Count, ¶ 3. Thus the existence and nature of the examinations performed on the City's behalf are crucial to the proof of plaintiff's case. They are similarly crucial to the City's defenses, since without the test reports, the City will be unable to refute plaintiff's allegations of negligence and gross negligence.[8] Further, it is clear that the evidence requested cannot be obtained from a less intrusive source, since the reports are sui generis. For these reasons, as in Denis, supra, the balance between disclosure and confidentiality weighs heavily in favor of disclosure.
The decision in Siegfried v. City of Easton, supra, cited previously in support of the argument that pre-employment psychological testing is not protected by the psychologist privilege, alternatively employs this balancing analysis and supports the result reached here. In that case, a plaintiff who was allegedly assaulted by a police officer sought to compel production of the police officer's pre-employment psychological testing, arguing that the material was relevant to his § 1983 claims against the City. Defendants opposed plaintiff's motion, asserting both the federal psychotherapist-patient privilege and executive privilege. The court granted plaintiff's motion. When construing the effect of the federal privilege, it engaged in a balancing process similar to that employed in New Jersey, weighing the plaintiff's need for the information against the defendant's right to confidentiality.[9] In determining first the inapplicability of the privilege and then, alternatively, that the privilege could be breached, the court held:
In the instant action, the information sought by plaintiffs is highly relevant and may provide compelling evidence concerning the city's knowledge of defendant Schlegel's propensity toward violence....
The city requires that all applicants undergo an evaluation by a licensed clinical psychologist. After the examination, the psychologist reports his findings to the police department. The police department considers the report, along with numerous other items, in deciding whether the applicant is a worthy candidate for employment.
It is obvious from this description that when an applicant consults with this psychologist, he understands that the psychologist will be reporting back to the police department. Confidentiality *179 between psychologist and patient is not expected in this situation. If a patient makes a communication expecting it to be disclosed to a third party who is not involved in the patient's treatment, the psychologist-patient privilege does not apply. [Citation omitted.]
However, even if anticipated disclosure to a third party did not extinguish the privilege, it would not apply in this case. Under the circumstances described above, it cannot be said that the privacy interests of defendant Schlegel in his communications with a psychologist employed by the police department outweigh the evidentiary need and the federal policy in favor of disclosure.

[Id. at 100-01.][10]
See also Mueller v. Walker, 124 F.R.D. 654, 658-59 (D.Ore.1989) mod. on other grounds, 1989 WL 35864 (D.Ore.1989) (employing a balancing analysis in a similar factual situation). See gen. 3 Weinstein & Berger, Weinstein's Evidence § 504.06[3] and § 504.08[1] (1998). Contra see Mason v. Stock, 869 F.Supp. 828, 833 (D.Kan. 1994) (finding officer's legitimate expectation of privacy to outweigh the state's interest in disclosure under the "Colorado test").
In conclusion, although precedent is sparse on the issues presented by plaintiff's motion, its underlying rationale compels the disclosure of reports such as these whose very existence underlies plaintiff's claims and whose content is crucial both to the proofs of the plaintiff and the municipal defendant. To refuse disclosure under an appropriate confidentiality order in the circumstances presented would result in an unsupportable judicial evisceration of the evidence available to the parties. The privacy interests of Detective Bootes do not warrant this result.
NOTES
[1] Because the use of materials contained in personnel files was restricted, the result in Denis can be distinguished from the results in cases in which the confidentiality provisions of Executive Orders No. 9 and 11 (October 1, 1963 and November 15, 1974, respectively) have been invoked successfully to bar disclosure to newspapers. See, e.g., Trenton Times Corp. v. Bd. of Ed. of Trenton, 138 N.J.Super. 357, 351 A.2d 30 (App.Div.1976) and Collins v. Camden Cty. Dept. of Health, 200 N.J.Super. 281, 491 A.2d 66 (Law Div.1984). See also, State v. Jones, 308 N.J.Super. 15, 705 A.2d 373 (App.Div.1998) (in a case exploring the extent of a criminal defendant's right to exculpatory material, a ruling that almost all of the personnel records of persons employed by the prosecutor were confidential was buttressed by Executive Order No. 11).
[2] A recent change in counsel made a more timely assertion of privilege impractical. Additionally, at the time of oral argument defendant Bootes had not yet been provided with a copy of the records at issue.
[3] The reports of Dr. Guller contain his summary evaluation of the results of various tests conducted on defendant Bootes as well as a personal interview. However, neither the actual test questions and answers nor the contents of the interview is disclosed. It is therefore impossible for me to determine how intrusive or revelatory the testing actually was. The present ruling is intended to apply only to Dr. Guller's reports. The issue of the discoverability of the underlying data may occasion different legal arguments and may require consideration of factors different from those raised here, particularly in light of the fact that the hiring and retention decisions of the police were based on the reports, not the underlying information. Thus, the issue is not ripe for decision.
[4] The above cases can be distinguished from ones in which discovery of debriefing or counseling records was sought and denied. See Jaffee v. Redmond, 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996) (counseling); Williams v. District of Columbia, 1997 WL 224921 (D.D.C.1997) (holding nondiscoverable an evaluation of a police officer conducted as a precondition to his return to active duty following shooting of a civilian in which the content of the evaluation was not reported to the police department).
[5] The federal psychotherapist-patient privilege differs from the psychologist privilege enacted in New Jersey. Fed.Evid.R. 504 provides:

(a) Definitions.
(1) A "patient" is a person who consults or is examined or interviewed by a psychotherapist.
***
(3) A communication is "confidential" if not intended to be disclosed to third persons other than those present to further the interest of the patient in the consultation, examination, or interview ...
(b) General rule of privilege.A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications, made for the purposes of diagnosis or treatment of his mental or emotional condition ... among himself [and] his psychotherapist....
The federal privilege was first recognized by the U.S. Supreme Court in Jaffee, supra, a § 1983 action against a police officer and the police department in which the Court held that records of counseling of the defendant officer conducted after she had fatally wounded a civilian to be privileged and thus shielded from disclosure. The Jaffee court did not fully define the scope of the privilege, but held that the privilege was not qualified, and thus not subject to a balancing test based on the need for the confidential information. Id. 518 U.S. at 17, 116 S.Ct. at 1932, 135 L.Ed.2d at 349. Compare Kinsella v. Kinsella, 150 N.J. 276, 306-07, 696 A.2d 556 (1997).
In an action instituted in New Jersey state court that raises claims under a federal statute, the New Jersey Rules of Evidence, not the Federal Rules, govern. See Busik v. Levine, 63 N.J. 351, 307 A.2d 571 (1973) (holding Rules of Evidence to be procedural); Genovese v. N.J. Transit Rail Operations, 234 N.J.Super. 375, 378-79, 560 A.2d 1272 (App. Div.), certif. denied, 118 N.J. 195, 196, 570 A.2d 960 (1989).
[6] In this connection, I note, however, that the Appellate Division has held in State v. L.J.P., supra, that a child victim of sexual assault had not waived the psychologist privilege as the result of the dissemination of her psychologist's reports to the Division of Youth and Family Services. Id. 270 N.J.Super. at 438, 637 A.2d 532.
[7] Kozlov holds in an attorney-client context that the privilege can be overridden if the party seeking disclosure establishes (1) a legitimate need for the evidence; (2) its relevance and materiality to an issue before the court; and (3) by a fair preponderance of the evidence, that the information cannot be secured from any less intrusive source. Id.
[8] In this regard, one federal court has held in a suit for false arrest instituted under 42 U.S.C. § 1983, that a jury may infer gross negligence on the part of a municipality and its police department if it fails to conduct pre-employment and post-incident psychological testing of police force members. See, Hild v. Bruner, 496 F.Supp. 93, 98 (D.N.J.1980).
[9] As noted in footnote 3, supra, balancing has now been rejected by the U.S. Supreme Court. However, that Court's determination does not affect New Jersey's application of its own evidential rule.
[10] The court also found none of the recognized applications of executive privilege to fit the facts at issue and rejected defendant's argument that disclosure would be against the "public interest," observing: "It would make no sense to allow the City, under whose color of authority Officer Schlegel has allegedly violated plaintiff's rights, to limit unilaterally the availability of relevant evidence under the guise of this privilege." Siegfried, supra, 146 F.R.D. at 101-02.