Limmie CAVER, et al., Plaintiffs,

v.

THE CITY OF TRENTON,
et al., Defendants.

No. CIV. A. 99–1636(MLC).

United States District Court,
D. New Jersey.

March 10, 2000.

As Amended March 14, 2000.

As Amended March 31, 2000.

Patrick J. Whalen, James Keys, Jr., Julie Levinson Werner, (Argued), Lowenstein Sandler, P.C., Roseland, NJ, for Plaintiffs.

Casandra T. Savoy, Montclair, NJ, for Plaintiffs.

Kevin P. Kovacs, Purcell, Reis, Shannon, Mulcahy & O'Neill, Bedminster, NJ, for Lawrence M. Davis.

Caryl M. Amana, City of Trenton, Law Department, Trenton, NJ, for City of Trenton.

Susan S. Singer (Argued), Kathleen C. Goger, Singer & Goger, Newark, NJ, for Joseph Valdora.

Joel B. Korin, Kenney & Kearney, LLP, Cherry Hill, NJ, for Paul J. Meyer.

George Robert Wills, Wills, O'Neil & Mellk, Princeton, NJ, for Daniel McKee and Joseph Constance.

Herbert I. Waldman, Stern, Dubrow & Marcus, PC, Maplewood, NJ, for Fred Reister and Ronald Cole.

Leon Savetsky c/o Loccke & Correia, Hackensack, NJ, for Trenton PBA, Local 11, Robert Smith, Joseph Nocera, Gary Guaer and Leonard Cipriano.

James P. Savio, Margate, NJ, for Thomas Murphy.

Emmett E. Primas, Jr., Woodbury, NJ, for Richard Kokotalaj, Thomas Coppalecchia, Robert Defeo and Alfred Auletta.

## MEMORANDUM OPINION

HUGHES, United States Magistrate Judge.

This matter comes before the Court on Plaintiffs' motion to compel the production of psychological records of Defendant Joseph Valdora and four non-parties pursuant to FED.R.CIV.P. 26(b)(1). Defendants oppose the motion. The Court has reviewed the written submissions and conducted oral argument on February 14, 2000. For the reasons that follow, Plaintiffs' motion is denied.

## I. *BACKGROUND*

On April 9, 1999, a group of black Trenton police officers and the Brother Officers Law Enforcement Society ("BOLES")[1] filed a Complaint alleging civil rights violations and other federal and state law claims. *See* Complaint. The Complaint essentially alleges that Defendants have adopted and implemented policies and practices which treat black police officers differently from similarly situated white police officers. Plaintiffs allege that the Defendants have discriminated against them on the basis of race with respect to the terms and conditions of their employment in violation of Title VII of the Civil Rights Act of 1964, the New Jersey Law Against Discrimination, and 42 U.S.C. § 1983. *See* Compl. at ¶ 26. Plaintiffs allege that they have received disparate treatment with respect to promotions, training, educational opportunities, transfers and the enforcement of rules and regulations for disciplinary purposes. *See* First Amend. Compl. at ¶ 28.

Plaintiffs also allege that they have been retaliated against as a result of complaining about alleged discriminatory practices and other unconstitutional and unlawful conduct

---

**1.** BOLES is a Black Fraternal Police Organization established by black police officers from the Trenton Police Department in 1968. The goal of the organization is to address concerns of black police officers in the department and serve as liaison between the black community and law enforcement. *See* compl. at ¶ 36.

within the Trenton Police Department, and for announcing their intent to file a complaint with the Equal Employment Opportunity Commission. *Id.* at ¶ 29. Additionally, Plaintiff Davis alleges that he was "coerc[ed] to undergo ... unwarranted psychological and psychiatric testing despite the lack of any rational basis for such testing[ ]" in retaliation for his complaints concerning alleged misconduct in the Dispatch and Communications Unit. *Id.* at ¶¶ 152–157, 224, 229–232.

On October 15, 1999, the Court held a telephonic conference on the record with all counsel to discuss the discoverability of the fitness for duty psychological reports of Defendant Valdora and four non-party police officers. Plaintiffs had served a *subpoena duces tecum* on the psychiatrist for the production of these records. Plaintiffs' counsel argued that the reports were relevant to Plaintiffs' claim of disparate treatment. Plaintiffs contended that the records were necessary in order to contrast the treatment of other officers who were referred for fitness exams. In response, Defendants argued that the reports were protected by the psychotherapist-patient privilege. Defendants also argued that they were irrelevant because the psychological reports were never disclosed to the Police Department or other city personnel, and that the only information disclosed to police officials was the ultimate opinion as to whether the particular officers were fit or unfit for duty. The Court ordered that the City produce all documents relating to referrals for psychological evaluation, and any documents that the City received back with respect to the doctor's final conclusion as to fitness for duty. However, the Court declined to require that the psychological records or reports themselves be produced. The Court also indicated that Plaintiffs could file a formal motion to compel production of the actual reports at a later time.

On November 16, 1999, the Court held a status conference, on the record, and again heard oral argument on the discoverability of the psychological reports. The Court reiterated that the City should produce all documents relating to referrals, and that Plaintiffs could file a formal motion to compel production of the actual psychological records and reports. The Court went further

and required that the records be submitted for *in camera* review, and that if the Court were inclined to disclose any records, it would first afford any Defendant the opportunity to object in writing. The Plaintiff did not object to this procedure.

On November 30, 1999, the Court conducted an *in camera* review of the psychological files of Defendant Valdora and three non-parties, and found that all the documents in all of the files were non-discoverable with one exception, a five page generic document contained in the file of one of the non-parties. *See* ltr. from the Court dated Dec. 2, 1999. The Court found that the remainder of the documents were not relevant as contemplated by FED.R.CIV.P. 26(b)(1). The Court alternatively found that disclosure would have a chilling effect on the doctor-patient privilege. *See id.* Thereafter, Plaintiffs filed the present formal motion to compel the production of psychological records of Defendant Joseph Valdora and four non-parties pursuant to FED.R.CIV.P. 26(b)(1).

## II. *MOTION TO COMPEL*

Plaintiffs allege that the discovery conducted thus far demonstrates that there is an objective basis to believe that Defendant Valdora "exhibited racially hostile behavior and that his own psychological stability is in question." *See* plts. ltr. brf. at p. 3. Plaintiffs contend that in less than a ten year period, the Trenton Police Department has received twelve complaints against Defendant Valdora and thirteen prisoner injury reports. *Id.* One of the incidents involved a Hispanic female city employee whom Defendant Valdora attempted to arrest in 1994 which resulted in an internal affairs investigation. *Id.* at pp. 3–4. A second incident involved the arrest of a black man where it was alleged that Defendant Valdora hit the man "in the face with his fists in order to bring [the man] under control and to affect the arrest." *Id.* at p. 4. A third incident involved a black woman who complained that Defendant Valdora directed a racial slur at her. *Id.* The above incidents and others prompted the police to recommend Defendant Valdora for evaluation by the Police Surgeon for the City of Trenton. *Id.*

Plaintiffs contend that Defendant Valdora's psychological records will disclose the information Defendant Valdora conveyed to the police psychologist relative to the above incidents, and will also reveal the "knowledge the Police Department is charged with having" with respect to Defendant Valdora's behavior. *Id.* at p. 5. Plaintiffs contend that this information is relevant to their claims of negligent hiring and retention and intentional misconduct. *Id.* at p. 6.

Plaintiffs also contend that this information is relevant to their claim of disparate treatment. In that regard, Plaintiffs contend that the psychological records will show that Defendant Valdora and the four other white police officers (non-parties) underwent psychological testing and were permitted to remain on the Trenton police force, whereas, Plaintiff Davis was ordered to undergo psychological testing, and the results led to his suspension. *Id.* Plaintiffs also contend that Defendant Valdora was one of the "critical decision makers" with respect to whether Plaintiff Davis would undergo compulsory psychological testing. *Id.* at p. 3. Plaintiffs contend that Defendant Valdora's psychological records may show Defendant Valdora's motive for recommending Davis for psychological evaluation. Also, Plaintiffs contend that there is no "indication from any of the records provided thus far that Defendant Valdora expected that the substance of his mandated counseling would remain confidential." *Id.* at p. 5. Finally, Plaintiffs indicate that they would be amenable to a Protective Order, that would limit disclosure of the psychological records to "attorney's eyes" only.

In response, Defendants argue that the records are protected by the psychotherapist-patient privilege established by the United States Supreme Court in *Jaffee v. Redmond,* 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996). Defendants contend that Trenton's procedures relating to fitness for duty psychological evaluations are designed to effect absolute confidentiality. *See* Df. opp. at p. 3. Defendants contend that when the police department decides to have an officer psychologically evaluated, the officer is referred to an outside healthcare provider, in this case, Corporate Health Center (CHC). *Id.* Defendants contend that CHC only performs a physical examination of the

officer and then CHC refers the officer to an independent mental health professional for psychological evaluation, diagnosis, and if necessary, treatment. *Id.* Defendants contend that any reports of the independent mental health professional containing specific diagnosis, clinical impressions, and the like, are sent to and retained by CHC, and are not disclosed to City of Trenton personnel. *Id.* CHC then reports the final conclusions of fitness or unfitness to City Police officials. *Id.* The City of Trenton does not receive, nor has access to, the underlying psychological report or records. *Id.* Defendants also contend that any recommendation for treatment is communicated to the City in general terms, with care taken not to disclose any specific diagnosis or clinical observations. *Id.* at pp. 3–4.

Defendant Valdora contends that when he submitted to a psychological evaluation through a referral from CHC for purposes of diagnosis, he specifically inquired about the confidentiality of the records resulting from the examination. *See* Valdora Affid. at ¶ 2. Defendant Valdora contends that he was told that the psychological records and reports were strictly confidential and would not be disclosed to the Police Department, and that the City would only be given a general conclusion concerning psychological fitness. *Id.* Defendant Valdora contends that he had an expectation that the psychological records and reports would be kept confidential. *See* Valdora Aff. at ¶ 2.

With respect to Plaintiffs' relevancy argument, Defendants contend that the amended complaint does not allege negligent hiring, and that insofar as Plaintiffs may allege negligent supervision or retention, the psychological reports at issue have no relevance to such a cause of action since the police department was not provided with the psychological reports or records, and thus, could not have relied upon them. *See* Df. ltr. brf. at p. 12. Defendants contend that pursuant to *Denis v. City of Newark,* 307 N.J.Super. 304, 704 A.2d 1003 (App.Div.1998), it must be shown that the employer knew of the employee's dangerous propensity which posed a risk of injury of the sort allegedly suffered by that plaintiff in order to make out a *prima facie*

case of negligent retention. *See* Df. ltr. brf. at p. 12–13. Defendants contend that pursuant to *Denis* "information about the officer's relevant propensities, known or accessible to the municipal employer—such as prior disciplinary charges for assaultive behavior in the officer's personnel file" would be relevant on the issue of knowledge. *Id.* However, since the psychological reports were not ever provided to the police department, Defendants argue that the City could not have relied upon the records, and thus, they are irrelevant. *Id.* at p. 13.

Defendants also argue that Plaintiffs' contention that the psychological records are relevant in order to show disparate treatment of black police officers has no merit because the comparative information necessary to show any alleged disparate treatment, here the psychological records, are similarly not known, accessible to, or relied upon by the Police Department. Therefore, they have no relevance to the Trenton Police Department's alleged motives or intent. *Id.* at pp. 13–14.

Finally, Defendants argue that Plaintiffs' contention that Defendant Valdora's psychological records might provide evidence of Defendant Valdora's motive in recommending Plaintiff Davis for evaluation has no merit. Defendants contend that Defendant Valdora's psychological exam, which occurred almost two and a half years before the conduct that Plaintiff Davis complains of, has "nothing to do with assessing a subordinate's need for psychological counseling" and that Plaintiffs' are clearly "fishing". *Id.* at 14. Defendants contend that in 1997 Plaintiff Davis began complaining about the "radio room" and had decided that the "radio room" was out to "get him." *Id.* at p. 5. In October 1997, members of the internal affairs division investigated one of Plaintiff Davis' complaint and determined that his allegations were unfounded. *Id.* at pp. 5–6. During this time period, Deputy Chief Meyers received complaints from a communications supervisor about Plaintiff Davis. Plaintiff Davis also continued to complain about the dispatchers. *Id.* Captain McKee decided to recommend Plaintiff Davis for evaluation because of a perceived change in behavior, possible stress, his refusal to accept medical treatment following a series of off-duty neck injuries, and

because of the suicide of his brother. *Id.* at pp. 6–7.

Plaintiffs reply by arguing that Defendants' contention that they have no access to the psychological records, and yet were able to produce them to the Court for *in camera* inspection, is contradictory. *See* Plt. reply brf. at pp. 1–2. The Court notes that Ms. Amana had to obtain the medical files from CHC because they were not in the possession of the City. Plaintiffs also argue that Defendants have not provided any written documentation to support the City's claimed procedure of confidentially regarding psychological evaluations except for "self-serving" affidavits. *Id.* at p. 2. Plaintiffs argue that it "defies logic" that the City of Trenton would not have a written departmental regulation, policy, memoranda or the like, concerning confidentiality of compelled examinations. *Id.* Plaintiffs also argue that it "defies logic" that the police department would simply rely on a "pass" or "fail" recommendation in deciding whether to retain an officer. *Id.*

Plaintiffs also contend that the facts in this case are distinguishable from those in *Jaffee,* and therefore, any reliance on *Jaffee* and the psychotherapist-patient privilege, is misplaced. *See* Plt. reply ltr. bfr. at p. 3. Plaintiffs also contend that FED.R.CIV.P. 26(b)(1) is to be liberally construed and that the psychological records are relevant to allegations in the complaint, including negligence and disparate treatment. *Id.* at p. 4.

Finally, Defendants request that if the Court determines that there is no privilege, the Court nevertheless should issue a Protective Order pursuant to FED.R.CIV.P. 26(c)(1). Defendants contend that Defendant Valdora's privacy interests far outweigh the Plaintiffs' need for the information. Defendant argues that the "privacy interest of any party in his psychological evaluation material is self-evident, particularly, as here, where the utmost confidentiality of the records has been maintained, up to this time, and the patient was assured of complete confidentiality before he submitted to the evaluation." *See* Singer 2/21/00 ltr. at p. 1. Defendants also contend that there is a strong public policy favoring non-disclosure. Defendants

argue that when a police officer's psychological status raises an issue of risk to public safety, the public has a strong interest in the accuracy and validity of the psychological evaluation of the police officer. *Id.* at p. 2. Defendants contend that the accuracy and validity of the psychological evaluation depends on the Police Officer's frank self-disclosure, which would be impaired if there was an "open-season" on discovery of psychological reports. *Id.*

## III. *DISCUSSION*

### A. *Scope of Discovery*

The Federal Rules of Civil Procedure embrace a liberal policy for providing discovery and contain the following provision governing the scope of such discovery:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents or other tangible things and the identity and location of persons having knowledge of any discoverable matter. The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

FED.R.CIV.P. 26(b)(1). Courts have construed this rule liberally, creating a broad range for discovery which would "encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978); *Lesal Interiors, Inc. v. Resolution Trust Corp.*, 153 F.R.D. 552, 560 (D.N.J. 1994). The parties must be allowed to examine all relevant evidence so that each will have a fair opportunity to present an effective case at trial. *Nestle Foods Corp. v. Aetna Cas. and Sur. Co.*, 135 F.R.D. 101, 104 (D.N.J.1990); *see also Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947) (explaining that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation[ ]").

The party seeking discovery has the burden of showing that the information sought is relevant to the subject matter of the action and may lead to admissible evidence. *Nestle Foods Corp.*, 135 F.R.D. at 105. The scope of discovery does, however, have "ultimate and necessary boundaries." *Hickman*, 329 U.S. at 507, 67 S.Ct. 385. Discovery of matters not "reasonably calculated to lead to the discovery of admissible evidence" is not within the scope of Rule 26(b)(1). *Oppenheimer Fund, Inc.*, 437 U.S. at 352, 98 S.Ct. 2380; *Lesal Interiors Inc.* 153 F.R.D. at 560. Additionally, information that is privileged or otherwise protected may be deemed not discoverable. The burden of showing that a particular document is privileged or protected rests with the party asserting the privilege. *Torres v. Kuzniasz*, 936 F.Supp. 1201, 1208 (D.N.J.1996). Pursuant to Federal Rule of Civil Procedure 26(b)(5)

> [w]hen a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

Additionally, the Local Civil Rules make clear that the party asserting a privilege must describe the privilege and the privileged document(s) with particularity, and blanket assertions of privilege will not suffice. *See* L.Civ.R. 33.1(c), 34.1, 36.1(b).

### B. *Psychotherapist—Patient Privilege*

Rule 501 of the Federal Rules of Evidence provides that "the privilege of a witness, person, government, State or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States ... [where] State law supplies the rule of decision, the privilege ... shall be determined in accordance with State law." FED.R.EVID. 501. Accordingly, "in federal question cases the federal common law of

privileges applies." *See Wm. T. Thompson Co. v. General Nutrition Corp.,* 671 F.2d 100, 103 (3d Cir.1982). In cases where a District Court has jurisdiction to decide both federal and state law claims, the federal common law of privileges governs both the federal and state law claims. *Id.* at 104 n. 5, *see also, Spencer Savings Bank v. Excell Mortgage Corp.,* 960 F.Supp. 835, 836 (D.N.J.1997).

■ Defendants contend that the psychological records of Defendant Valdora are protected by the psychotherapist-patient privilege as enunciated by the Supreme Court in *Jaffee, supra,* and should therefore be protected from disclosure. Plaintiffs contend that *Jaffee* is inapplicable to the psychological records of Defendant Valdora, because unlike the Defendant in *Jaffee,* Defendant Valdora did not voluntarily seek psychological treatment or counseling. Plaintiffs also argue that Defendant Valdora had no expectation of confidentiality. Defendants rely on *Valentin v. Bootes,* 325 N.J.Super. 590, 740 A.2d 172 (Law Div.1998); *Siegfried v. City of Easton,* 146 F.R.D. 98 (E.D.Pa.1992); *Miller v. Pancucci,* 141 F.R.D. 292 (C.D.Cal.1992) and *J.N. v. Bellingham School Dist. No. 501,* 74 Wash.App. 49, 871 P.2d 1106 (1994) for the proposition that in the case of Defendant Valdora, the psychotherapist-patient privilege is inapplicable.

In *Jaffee, supra,* survivors of a man who was fatally shot by a police officer sued the officer and the Village alleging that the Defendants violated the decedent's constitutional rights by using excessive force. During pretrial discovery, Plaintiffs learned that after the shooting, the police officer participated in approximately 50 counseling sessions with a clinical social worker employed by the Village Defendant. Plaintiff sought discovery of the clinical social worker's notes, and Defendants refused, claiming that the notes were protected from disclosure by the psychotherapist-patient privilege. In holding that the statements made to the clinical social worker and her notes were privileged and protected from compelled disclosure, the Supreme Court stated that

> [t]he psychotherapist privilege serves the public interest by facilitating the provision of appropriate treatment for individuals suffering the effect of a mental or emotional problem. The mental health of our citizenry, no less than its physical health, is a public good of transcendent importance.

518 U.S. at 11, 116 S.Ct. 1923. The Court further stated

> [i]n contrast to the significant public and private interests supporting recognition of the privilege, the likely evidentiary benefit that would result from the denial of the privilege is modest. If the privilege were rejected, confidential conversations between psychotherapists and their patients would surely be chilled, particularly when it is obvious that the circumstances that give rise to the need for treatment will probably result in litigation. Without a privilege, much of the desirable evidence to which litigants such as petitioner seek access—for example, admissions against interest by party—is unlikely to come into being. This unspoken 'evidence' will therefore serve no greater truth-seeking function than if it had been spoken and privileged.

*Id.* at 11–12, 116 S.Ct. 1923. Accordingly, the Supreme Court held that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." *Id.* at 15, 116 S.Ct. 1923. It is important to note that the *Jaffee* court rejected a balancing of the need for the information against the need for confidentiality as a test for determining whether the privilege applied. *Id.* at 17, 116 S.Ct. 1923.

In *Valentin, supra,* a state case, the plaintiff brought an action against an off duty police detective, senior police officers, the police department, and the City Newark alleging negligent hiring and retention, and deprivation of constitutional rights in violation of 42 U.S.C. § 1983. Plaintiff alleged that the off duty police detective physically assaulted him and threatened him with a revolver. During the course of discovery, counsel for the City of Newark disclosed that Detective Bootes had undergone a psychological evaluation by an independent psychologist as part of the hiring process. 325 N.J.Super. at 592, 740 A.2d 172. It was also disclosed that Detective Bootes was ordered

by the Deputy Police Chief to be re-examined by the psychologist for further evaluation of his fitness to perform the role of a police officer after there had been a number of charges of assault, including one that involved an alleged assault on a police officer. *Id.* Counsel for the City of Newark refused to produce the psychologist's reports, and plaintiff moved to compel production. Although counsel for Bootes did not assert the psychologist privilege, the Court assumed for purposes of the decision that the privileged would be asserted. *Id.* at 595, 740 A.2d 172.

The Court recognized that "New Jersey's courts have accorded the [psychologist-patient] privilege greater scope and effect than the physician-patient privilege." *Id.* at 595, 740 A.2d 172 (citations omitted). The Court explained that the reason for the greater protection "lies in their recognition that the effectiveness of psychological therapy depends on the patient's willingness to disclose his or her 'most intimate emotions, fears and fantasies' and on the assurance that such disclosures will remain confidential." *Id.* at 595–96, 740 A.2d 172 (*quoting Arena v. Saphier,* 201 N.J.Super. 79, 86, 492 A.2d 1020 (1986)). However, the Court found that the case was different from cases like *Arena* because unlike the statements in the *Arena* matter, the communications of Detective Bootes were not made for purposes of therapy, but rather for testing. *Id.* at 596, 740 A.2d 172. The Court also distinguished the case from *Arena,* in that, Detective Bootes knew that the reports would be disclosed to members of the Police Department. Therefore, the Court reasoned that the Detective had no reasonable expectation of confidentiality. *Id.* at 597, 740 A.2d 172. However, the Court did not base its decision on these distinctions alone, but employed a balancing test, in order to determine where the invocation of the privilege could shield evidence from disclosure. The Court weighed "the parties' need for the materials, their evident relevance to claims made and defenses asserted, and the parties' inability to obtain comparable materials through less intrusive sources[.]" *Id.* at 601, 740 A.2d 172.

After balancing the parties' interests, the Court found that the psychologist reports were relevant and crucial to the Plaintiff's case, and similarly crucial to the City's defenses, since without them, the City of Newark would be unable to refute the Plaintiff's allegations of negligence and gross negligence. The Court also found that the information could not be obtained by less intrusive means. *Id.* The Court held that "the balance between disclosure and confidentiality weighs in favor of disclosure." *Id.* at 602–603, 740 A.2d 172. The Court also noted that the Supreme Court in *Jaffee,* applicable to federal cases, "did not fully define the scope of the privilege, but held that the privilege was not qualified, and thus not subject to a balancing test based on the need for the confidential information." *Id.* at 599 n. 5, 740 A.2d 172.

Similarly, in *Siegfried, supra,* the Court ordered that a police officer's pre-employment psychological testing be produced. The Court found that a psychological examination was part of the application process, and that an applicant understands that the psychologist report will be reported back to the police department. The Court held that when a patient makes a communication to a psychologist expecting it to be disclosed to a third person, the psychologist-patient privilege does not apply. 146 F.R.D. at 101. In *Miller, supra,* the Court ordered disclosure of psychological records finding that "defendants failed to present any information indicating that the requested documents have been kept confidential." 141 F.R.D. at 302–03. In *J.N., supra,* the mother of a student accused of sexually molesting another student signed a consent form for psychological evaluation. The form indicated that the purpose of the interview was not for treatment or counseling but to provide recommendations to assess the minor's need for special education services. 871 P.2d at 1115. The Court noted that the form did not mention anything about confidentiality and ordered disclosure. *Id.* Notably, these cases predate the *Jaffee* decision.

The Court finds that *Jaffee* is not limited to situations in which people voluntarily consult a mental health professional. The Supreme Court explicitly held that "confidential communications between a licensed psychotherapist and her patients in the course of *diagnosis* or treatment are protected from

compelled disclosure[.]" *Jaffee, supra,* 518 U.S. at 15, 116 S.Ct. 1923 (emphasis added). The Court finds that whether Defendant Valdora went to a psychologist voluntarily, or was ordered to go, is not dispositive of the issue. What is critical is that Defendant Valdora was examined by a psychologist for the purpose of diagnosing whether he was suffering from some mental illness or emotional disorder that would render him unfit to be a police officer.

More importantly, unlike *Valentin, Siegfried, Miller* and *J.N.,* the cases relied on by Plaintiffs, Defendant Valdora clearly had an expectation of confidentiality. He was told and reassured that the psychological records and reports would be kept strictly confidential, and would not be disclosed to the City of Trenton personnel. *See* Valdora Aff. at ¶¶ 2–3 & Norton Aff. at ¶¶ 3–5. The facts of this case parallel those in *Williams v. District of Columbia,* No. 96–0200–LFO, 1997 WL 22491 (D.D.C. Apr. 25, 1997), a case cited by Defendants. In that case, a police officer was required to speak to a psychiatrist as a precondition to returning to active duty after fatally shooting a man. The man's mother commenced a 42 U.S.C. § 1983 action alleging excessive force and wrongful death, and moved to compel the production of the officer's psychiatric records. The Court denied Plaintiff's motion, finding that *Jaffee* prohibited such disclosure. *Williams,* 1997 WL 22491, at *2. The Plaintiff, like the Plaintiffs in the present case, attempted to distinguish *Jaffee* by arguing that in *Jaffee* the officer sought counseling for purposes of psychiatric treatment, whereas the officer in *Williams,* was required to seek an evaluation as a precondition to being reinstated for active duty. *Id.* Plaintiff argued that the psychotherapist-patient privilege did not apply in such a "non-treatment" case. The Plaintiff in that case, again like the Plaintiff in the present case, relied on *Siegfried* for this proposition. However, the *Williams* Court found that the *Siegfried* court "never drew any bright-line distinction between psychiatric counseling for 'treatment' versus 'non-treatment' purposes." *Id.* The *Williams* court also distinguished its case from *Siegfried* finding that *Siegfried* had a different reporting mechanism then that utilized by Defendants. The Court stated:

The District has represented in open court that, under its policy, the psychiatrist reports back to the police department, but does not disclose any confidential communications. Rather, he or she simply gives a 'Yes or No' recommendation regarding whether the officer should return to active duty. Most importantly, the psychiatric records of the officer are kept private. Thus, there is no indication here that Officer Payne waived his psychotherapist-patient privilege.

*Id.* Here as in *Williams,* CHC does not disclose any confidential information but merely gives a "Pass" or "Fail" recommendation of fitness for duty to the police department. Also, the psychological reports of the officers are kept completely confidential. Therefore, the Court finds that the psychological reports and records of Defendant Valdora and the four non-parties are protected by the psychotherapist-patient privilege.

C. *Protective Order*

■ Defendants contend that even if the Court were to find that the psychotherapist-patient privilege does not apply, Defendant Valdora's privacy interest far outweighs the Plaintiffs' need for the information, warranting the issuance of a protective order. The Federal Rules provide for protective orders as follows:

[T]he court … may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense, including one or more of the following:

(1) that the disclosure or discovery not be had. . . .

FED.R.CIV.P. 26(c)(1). The Court may, in its discretion, enter such a protective order upon a showing of good cause, for which the movant bears the burden of persuasion. *Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 785–87 (3d Cir.1994); *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1121 (3d Cir.1986), *cert. denied,* 484 U.S. 976, 108 S.Ct. 487, 98 L.Ed.2d 485 (1987). "Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity." *Publicker Indus.,*

*Inc. v. Cohen,* 733 F.2d 1059, 1071 (3d Cir. 1984) (citations omitted); *Pansy,* 23 F.3d at 786. In determining whether good cause exists the Court must balance a party's need for the information against the resulting injury if disclosure is compelled. *Id.* at 787. The Third Circuit Court of Appeals has explained that

> [i]t is appropriate for courts to order confidentiality to prevent the infliction of unnecessary or serious pain on parties who the court reasonably finds are entitled to such protection. In this vein, a factor to consider is whether the information is being sought for a legitimate purpose or for an improper purpose. However, privacy interests are diminished when the party seeking protection is a public person subject to legitimate public scrutiny.

*Id.* Defendants contend that Defendant Valdora's privacy interests far outweigh the Plaintiffs' need for the information. Defendants contend that given the nature of the information elicited and the fact that Defendant Valdora was assured of complete confidentiality, and confidentiality has been maintained up to this point, warrants a protective order barring complete discovery. Defendants also contend that there is a strong public policy favoring non-disclosure. Defendants contend that when a police officer's psychological status raises an issue of risk to public safety, the public has an interest in the accuracy and validity of the psychological evaluation of the police officer. Defendants contend that the accuracy and validity of the psychological evaluation strongly depends on the Police Officer's frank self-disclosure, which would be impaired if there were to be "open-season" on discovery of psychological reports.

The Court finds that disclosure here would be detrimental to the public good. Police Officers are required to undergo psychological evaluations in order to determine whether they are mentally fit to be police officers. This testing is performed not only to benefit the officer's mental well-being, but more importantly, to ensure the safety of the community by protecting its citizens from police officers whose mental instability poses a risk to public safety. If police officers know that their psychological records may be disclosed to the public, there exists a likelihood that they would not be completely candid when speaking to a mental health professional. This lack of candor would, in turn, defeat the purpose for psychological evaluations, which is, determining mental fitness for the job. The Court recognizes that the public has an interest in knowing whether their police are mentally fit for the job, but disclosure of actual psychological records is not necessary and would have a chilling effect on frankness between patient and psychologist. If police officers are not completely honest when speaking to a mental health professional, it will make it more difficult for the mental health professional to accurately evaluate the mental status of a police officer, and to ensure public safety.

Accordingly, the Court finds that both the City of Trenton, and the individual police officers whose records are sought, have demonstrated good cause sufficient to maintain confidentiality. Specifically, disclosure would chill the candor between the police officer and the psychologist necessary for effective diagnosis and evaluation.

### D. Relevance

The Court also finds that Plaintiffs have failed to sustain their burden that the psychological records of Defendant Valdora are "relevant to the subject matter" of the action or that they are "reasonably calculated to lead to the discovery of admissible evidence." FED.R.CIV.P. 26(b)(1). First, Plaintiffs contend that the psychological records of Defendant Valdora and the four other white non-party police officers are relevant to the issue of disparate treatment. Plaintiffs contend that because Defendant Valdora, a white officer, had undergone a psychological evaluation but was retained by the Police Department, while Plaintiff Davis, a black officer, had undergone a psychological evaluation and was allegedly suspended, the underlying psychological records and reports are relevant to the issue of disparate treatment.

Although the Court is mindful that relevance for purposes of discovery is to be liberally construed, the Court finds that the underlying psychological records, reports, notes, and the like, of Defendant Valdora

have no bearing on the issue of disparate treatment. The Court finds that because the Police Department does not ever see or have access to the underlying records and reports, the Police Department could not have used the records as a basis for treating black police officers different from similarly situated white police officers. The Court is persuaded by the Affidavit of James Norton, Personnel Director of the City of Trenton, in which he swears that "[a]ny records and reports containing specific diagnoses, testing information, clinical impressions and like materials resulting from psychological examinations arranged through CHC are retained by CHC, and are not transmitted to City of Trenton personnel." Aff. of James V. Norton at ¶ 4.

The Court finds that evidence of alleged disparate treatment in connection with psychological evaluations, would be found in whatever disciplinary action the Police Department takes based on the final diagnosis of "pass" or "fail." For sake of argument, if a "pass" or "fail" is determinative of whether a police officer is retained or fired, and a white officer receives a "fail" and is retained, and a black officer receives a "fail" and is fired, then this may be circumstantial evidence of disparate treatment. It is not necessary to examine the underlying psychological records to make out a case of disparate treatment because the underlying records themselves had no impact on the end result.

The Court also finds that the psychological records of Defendant Valdora were, in fact, not relied upon, and thus, had no bearing on the issue of negligent retention or supervision. The Court agrees with Defense Counsel that, pursuant to *Denis, supra,* it must be shown that the employer knew of the employee's "dangerous propensities and the risk of injury he presented to the public[ ]" in order to make out a *prima facie* case of negligent retention. 307 N.J.Super. at 314–15, 704 A.2d 1003. Evidence tending to show knowledge would have to be evidence that Defendants knew of or had access to, such as, Defendant Valdora's disciplinary file and internal investigations file, which have been produced. Since the psychological reports were not provided to the Police Department, Plaintiffs cannot contend that the Police Department relied on the psychological reports

in deciding whether to retain Defendant Valdora. Neither can the psychological reports form a basis for finding negligent supervision for the same reason. Therefore, the Court finds that the psychological records, reports, data, and doctor's notes have no relevance and is not "reasonably calculated to lead to the discovery of admissible evidence." The Court also finds no merit in Plaintiffs' assertion that the psychological report of Defendant Valdora is relevant to the issue of Defendant Valdora's "motive" in recommending Plaintiff Davis for psychological evaluation.

Finally, the Court conducted an *in camera* review of all psychological records of Defendant Valdora and the non-party officers. After careful review, the Court finds that the records do not provide any information that would in any way be related to disparate treatment or discrimination of Plaintiffs. In Defendant Valdora's case, if Plaintiffs were citizens alleging excessive force claims then perhaps a case for disclosure could be made. Here, the records themselves, in the Court's judgment are so irrelevant to the subject matter of the case that even the liberal standard of FED.R.CIV.P. 26(b)(1) cannot be met.

## IV. *CONCLUSION*

For the reasons stated, Plaintiffs' motion to compel the production of the psychological records and reports of Defendant Valdora and the four non-parties is denied. The Court finds that the psychotherapist-patient privilege as defined in *Jaffee* is applicable to cases involving involuntary psychiatric/psychological evaluations, like here, and records relating to such evaluations are protected from disclosure. Alternatively, the Court finds good cause justifying a protective order permitting non-disclosure, even if *Jaffee* did not apply here. Finally, the Court, after *in camera* review of the records, finds that the psychological records are simply irrelevant, even given the liberal standard of FED. R.CIV.P. 26(b)(1), and need not be produced.